UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; PLANNED PARENTHOOD LEAGUE OF MASSACHUSETTS; and PLANNED PARENTHOOD ASSOCIATION OF UTAH,<br><br>      Plaintiffs,<br><br>  v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; MEHMET OZ, in his official capacity as ADMINISTRATOR OF THE CENTERS FOR MEDICARE & MEDICAID SERVICES; and CENTERS FOR MEDICARE & MEDICAID SERVICES,<br><br>      Defendants. | Case No. 1:25-cv-11913-IT |

**AMENDED TEMPORARY RESTRAINING ORDER**

July 11, 2025

TALWANI, D.J.

Before the court is Defendants' Motion to Dissolve Temporary Restraining Order [Doc. No. 29] and accompanying memorandum of law. For the reasons that follow, the court dissolves the Temporary Restraining Order [Doc. No. 18] issued on July 7, 2025, and enters this Amended Temporary Restraining Order.

**I. Defendants' Motion to Dissolve**

Defendants contend first that the Temporary Restraining Order was entered without notice. Defs.' Mem. 2 [Doc. No. 30]. But Defendants do not dispute Plaintiffs' certification that

counsel contacted Defendants by emailing Eric J. Hamilton (Deputy Assistant Attorney General, Federal Programs Branch), Alex Haas (Co-Director, Federal Programs Branch), Diane Kelleher (Co-Director, Federal Programs Branch), John Griffiths (Co-Director, Federal Programs Branch), and Rayford Farquhar (Chief, Defensive Litigation, Civil Division, U.S. Attorney's Office for the District of Massachusetts) before filing Plaintiffs' emergency motion and received no response at the time of filing. See Plaintiffs' Emergency Motion 3 [Doc. No. 4]. Defendants also do not dispute Plaintiffs' certificate that at the time the motion was filed, all parties were served electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2). See Plaintiffs' Emergency Motion 4 [Doc. No. 4]. Accordingly, the claim that Defendants did not receive notice of Plaintiffs' emergency motion is not correct.

Defendants object further that they were not afforded an opportunity to be heard before the court entered a temporary restraining order. Defs.' Mem. 2 [Doc. No. 30]; see also id. at 5 ("Had the Court allowed the Government the opportunity, it would have responded to Plaintiffs' motion and explained why no emergency justified immediate relief."). Where a court determines that relief is necessary before both sides have an opportunity to be heard, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439 (1974). Here, the court acted expeditiously on Plaintiffs' emergency request but simultaneously set hearing on Plaintiffs' request for preliminary injunction for fourteen days later, and explicitly noted that the Temporary Restraining Order would remain in effect "for fourteen days, unless vacated, modified, or extended by the court." Temporary Restraining Order 2 [Doc. No. 18] (emphasis added). And the court has not prevented

Defendants from being heard more promptly. To the contrary, the court reset hearing on Plaintiffs' Motion [Doc. No. 4] for an earlier date, for which Defendants conditioned their availability on maintaining the court's original July 14, 2025 briefing deadline. See Opp'n to Plaintiffs' Mot. to Continue Hearing 3 [Doc. No. 24]. Further, while Defendants now seek to dissolve the Temporary Restraining Order [Doc. No. 18], they have limited their motion to procedural grounds, stating that the merits would be addressed in Defendants' "forthcoming opposition" to Plaintiffs' emergency motion for a preliminary injunction. Defs.' Mem. 2 [Doc. No. 30].

Defendants additionally object that the court has not provided reasons for the restraining order issued or for the absence of any required bond. The court amends the Temporary Restraining Order to provide the court's reasons for the emergency order and to require a nominal bond.

## II. Plaintiffs' Motion for a Temporary Restraining Order

Plaintiffs' declarations established that widespread disruptions to patient care would occur in the absence of a Temporary Restraining Order. Disruption or delays in receiving healthcare is irreparable harm. See, e.g. Planned Parenthood of Kansas v. Andersen, 882 F.3d 1205, 1237 (10th Cir. 2018) ("A disruption or denial of . . . patients' health care cannot be undone after a trial on the merits."); cf. Harris v. Bd. of Supervisors, Los Angeles Cnty., 366 F.3d 754, 766 (9th Cir. 2004) (concluding adverse effects caused by delayed treatment resulting from reduced medical facility capacity was irreparable harm).

As set forth in Plaintiffs' declarations, Plaintiff Planned Parenthood Federation of America ("Planned Parenthood Federation") does not directly provide medical services, but its 47 members (the "Planned Parenthood Members") are non-profit healthcare providers that provide medical services through nearly 600 health centers in 47 states and the District of

Columbia. Custer Decl. ¶¶ 7, 12 [Doc. No. 5-15]. In 2023, Planned Parenthood Members served over two million patients in 2023, with 53% of these patents relying on Medicaid and other government-funded healthcare programs to pay for their care. Brindis Decl. ¶ 21 [Doc. No. 5-5]. Plaintiffs Planned Parenthood League of Massachusetts ("Planned Parenthood Massachusetts") and Planned Parenthood Association of Utah ("Planned Parenthood Utah") are Planned Parenthood Members. Planned Parenthood Massachusetts received $4,744,699.47 in Medicaid reimbursements during fiscal year 2023. Lee Decl. ¶ 29 [Doc. No. 5-2]. It provided services to approximately 10,822 patients enrolled in Medicaid in 2024, for contraception, cervical screenings, breast cancer exams, and STI tests. Id. ¶¶ 30–31. Planned Parenthood Utah received $706,251.02 in Medicaid reimbursements during fiscal year 2023. Ghorbani Decl. ¶ 24 [Doc. No. 5-2]. It provided service to approximately 2,096 patients enrolled in Medicaid in 2024. Id. ¶ 18. Planned Parenthood Utah provides for contraception, cervical screenings, breast cancer exams, testicular cancer screening, STI tests, and pregnancy testing. Id. ¶ 11.[1]

The legislation at issue, Section 71113(a) of "An Act to provide for reconciliation pursuant to title II of H. Con. Res. 14" ("the Reconciliation Act"), Pub. L. No. 119-21 (July 4, 2025), was signed into law on July 4, 2025. Section 71113 prohibits Medicaid reimbursements, effective immediately, to entities, such as Planned Parenthood Massachusetts, if as of October 1, 2025, they are (1) 501(c)(3) organizations, (2) essential community providers as defined in 45 C.F.R. § 156.235, (3) who provide for abortion (other than in limited excepted circumstances), and (4) who received more than $800,000 in Medicaid reimbursements in fiscal year 2023.

Section 71113 "is already . . . forcing some Members to turn away patients enrolled in

---

[1] While Planned Parenthood Massachusetts, Planned Parenthood Utah, and most other Planned Parenthood Members also provide abortions, they do not receive reimbursement for abortions from Medicaid funds or other federal funds except in permitted circumstances. Custer Decl. ¶ 45 [Doc. No. 5-1]; Lee Decl. ¶ 26 [Doc. No. 5-2].

4

Medicaid; to attempt to refer them to other providers; or to offer Medicaid patients (who, by criteria of the program, have low incomes) the option to pay out-of-pocket for services where state law allows." Custer Decl. ¶ 49 [Doc. No. 5-1]. And patients who can still access care at Planned Parenthood Member health centers could experience delays in receiving care with the law's implementation. Id. ¶ 51. For example, seven California Planned Parenthood Members will need to scale back healthcare services immediately, which means every patient who relies on their health centers for care will have increased difficulty accessing services at those centers. Tosh Decl. ¶¶ 6, 45 [Doc. No. 5-4]. Planned Parenthood Massachusetts had nearly 150 scheduled appointments for Medicaid patients at their health centers on July 7 and July 8 and began informing those patients when Section 71113 was enacted that they could not use their Medicaid coverage for services at Planned Parenthood Massachusetts healthcare centers. Lee Decl. ¶ 4 [Doc. No. 5-2]. Many of those patients cannot afford to pay for care and cannot get timely care at another provider that accepts Medicaid. Id.

Section 71113 also prohibits Medicaid reimbursements for any other entity that is an "affiliate" of a "prohibited entity." This application to "affiliates" of prohibited entities creates confusion among Planned Parenthood Members that do not independently qualify as a "prohibited entity," which widens the scope of immediate harm. For example, Planned Parenthood Utah, which did not receive more than $800,000 in Medicaid payments in federal fiscal year 2023, "stop[ped] seeking Medicaid reimbursement upon the law's enactment" because of its association with other Planned Parenthood Members and "the potential risk of liability arising therefrom." Ghorbani Decl. ¶ 20 [Doc. No. 5-3]. Because Planned Parenthood Utah cannot afford to provide healthcare services free of charge, it has already turned away Medicaid patients who had appointments in its health centers on Saturday, July 5. Id. ¶ 21.

5

Planned Parenthood Utah expects that those patients are unlikely to find another provider that sees Medicaid patients and can provide timely care. See id. ¶ 22.

Three Members—Planned Parenthood Gulf Coast, Planned Parenthood Greater Texas, and Planned Parenthood of Tennessee and North Mississippi—do not provide abortions because abortion is not legal in any state where their health centers are located. Custer Decl. ¶ 63 [Doc. No. 5-1]. If they are considered as "affiliates" of other Planned Parenthood Members that do provide abortions, they are not entitled to Medicaid reimbursement under Section 71113 despite not providing abortions, placing their patients' access to healthcare in jeopardy as well.

Where Section 71113 creates disruptions to healthcare with its implementation, a Temporary Restraining Order is necessary to prevent irreparable harm pending a hearing on Plaintiffs' request for a Preliminary Injunction.

Further, at this stage, the court finds Plaintiffs are likely to succeed on at least some of their claims that Section 71113 is unconstitutional where the provision excludes "affiliates" from receiving Medicaid funding. See Section 71113(b)(1). The Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others" in pursuit of desired political, educational, or social ends. Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984). By including "affiliates," Section 71113 burdens Planned Parenthood Members' right to associate with each other and with Planned Parenthood Federation.

Planned Parenthood Federation engages in activity protected by the First Amendment in furtherance of its mission to "ensur[e] that regardless of income, insurance, gender identity, sexual orientation, or race, people can receive high-quality, inclusive, and comprehensive sexual and reproductive health care; provid[e] related educational services; promot[e] research on

sexual and reproductive health; and advocat[e] for public policies that guarantee access to such services." Custer Decl. ¶¶ 12, 19 [Doc. No. 5-1]. Each Planned Parenthood Member licenses the use of the Planned Parenthood name, which expresses that the Planned Parenthood Member shares Planned Parenthood Federation's mission. See id. ¶¶ 14–15. Section 71113 burdens that expression by denying Medicaid funding to Planned Parenthood Members that did not receive more than $800,000 in Medicaid funding during fiscal year 2023 and/or do not provide abortions on the basis that they affiliate with Planned Parenthood Members that do. And Planned Parenthood Members that independently satisfy Section 71113's criteria as of the enactment date cannot now avoid its reach by pausing or ceasing to provide abortions so long as any other Planned Parenthood Member continues to do so. Relatedly, Section 71113's denial of Medicaid funding to "affiliates" leaves uncertain what a member can do (short of ending its affiliation with Planned Parenthood Federation and other Planned Parenthood Members) to avoid the law's burden, which makes the law suspect under the Fifth Amendment's due process clause. See F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012) (explaining void for vagueness doctrine address due process concern that "regulated parties should know what is required of them so they may act accordingly").

### III. A Nominal Bond is Proper

Federal Rule of Civil Procedure 65(c) provides in relevant part:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

The First Circuit has noted the "ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond." Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc., 925

7

F.2d 6, 9 (1st Cir. 1991).

Here, in determining the amount of security, the court considers the costs and damages that Defendants would sustain if they were wrongfully enjoined. The court finds that on the record before the court there are unlikely to be more than nominal damages because the Temporary Restraining Order does not compel Defendants to spend money they would not otherwise spend. Medicaid reimbursement is limited to eligible services provided to eligible patients. If patients are unable to obtain the services from a Planned Parenthood Member without a Temporary Restraining order in place, they presumably will attempt to obtain those services from another provider. If patients are able to find alternative providers, Defendants would reimburse those providers instead of a Member. And if Medicaid patients could not immediately obtain services elsewhere, Defendants would still not avoid paying Medicaid reimbursements to other providers in the longer term, as patients would still need the same services (and possibly additional care if a delay in obtaining screening or preventive treatments results in medical complications). Accordingly, the court imposes a nominal bond of $100 to be paid by Plaintiffs no later than July 15, 2025.

### IV. Conclusion

It is hereby **ORDERED** that the <u>Temporary Restraining Order</u> is modified as follows:

1. Defendants, their agents, employees, appointees, successors, and anyone acting in concert or participation with Defendants are hereby enjoined from enforcing, retroactively enforcing, or otherwise applying the provisions of Section 71113 of "An Act to provide for reconciliation pursuant to title II of H. Con. Res. 14," against Planned Parenthood Federation of America's members, including but not limited to Planned Parenthood League of Massachusetts and Planned Parenthood Association of Utah.

2. Defendants, their agents, employees, appointees, successors, and anyone acting in

concert or participation with Defendants shall take all steps necessary to ensure that Medicaid funding continues to be disbursed in the customary manner and timeframes to Planned Parenthood Federation of America's members, including but not limited to Plaintiffs Planned Parenthood League of Massachusetts and Planned Parenthood Association of Utah.

    3.    Defendants shall provide a copy of this Amended Temporary Restraining Order to all personnel within the Department of Health and Human Services and all state agencies involved with the disbursement of Medicaid funding.

    4.    Plaintiffs shall post a nominal $100 bond with the court no later than July 15, 2025.

This Temporary Restraining Order shall remain in effect through July 21, 2025, unless vacated, modified, or extended by the court.

IT IS SO ORDERED.

                                      /s/Indira Talwani
                                      United States District Judge

July 11, 2025
6:07 p.m.