IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*,

        *Plaintiffs*,

v.

ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,

        *Defendants*.

No. 1:25-cv-11913-IT

## DECLARATION OF ANNE MARIE COSTELLO

I, Anne Marie Costello, declare as follows:

1. I am employed by the Department of Health and Human Services (HHS) in the Center for Medicaid and CHIP Services (CMCS) at the Centers for Medicare & Medicaid Services (CMS), located at 7500 Security Boulevard, Baltimore, MD 21244. I am a Deputy Director for CMCS. I have held this position since January 2020. Before that, I served as the Director of the Children and Adults Health Programs Group within CMCS. I have been employed at CMS since 2010. In my role as a Deputy Director of CMCS, I manage a team of professional and administrative staff with a variety of advanced degrees in fields including economics, law, medicine, public health, public policy, finance, and business operations. My team is responsible for policy development, management, oversight, budget, and performance issues related to Medicaid, the Children's Health Insurance Program (CHIP), and the Basic Health Program (BHP) on behalf of CMS. My team and I regularly interact with representatives from states and other stakeholders.

1

2. Medicaid is a joint state/federal partnership. States are responsible for providing care to Medicaid beneficiaries and do so through both fee-for-service (FFS) and managed care delivery systems. States design their Medicaid programs including determining which delivery system(s) to utilize for providing care to Medicaid beneficiaries and which benefits are offered in each delivery system. The federal government outlines Medicaid program requirements and reviews and approves many components of a state's Medicaid program, such as underlying authorities for benefits, eligibility, fee-for-service provider reimbursement rates, managed care, and managed care contracts and rates.

3. The federal government also contributes federal financial participation (FFP) towards the Medicaid program. Federal law and regulations require that CMS issue advanced funding (through "initial grant awards") to states at the beginning of each quarter based on CMS-reviewed state expenditure estimates.

4. Once the advanced funding request is approved, the state can draw down the federal advance for the allotted amount as costs are incurred. 42 C.F.R. § 430.30(d)(3). The State draws down federal funds through a subaccount operated through the Payment Management System (PMS) application within HHS' Program Support Center (PSC). Section 430.30(d)(3), 42 C.F.R., provides that the grant award "authorizes the State to draw Federal funds as needed to pay the Federal share of disbursements." The state's quarterly federal Medicaid award is only to be used to reimburse Medicaid providers for actual payments. 42 C.F.R. § 430.30 and 45 C.F.R. § 95.13.

5. Those initial awards are reconciled to actual state expenditures following a finalization process that includes quarterly CMS reviews of state-submitted, actual expenditures and state draw-downs from its PMS subaccount. The Quarterly Medicaid Statement of Expenditures for the Medical Assistance Program (Form CMS-64) is the accounting statement that

each state Medicaid agency submits each quarter to CMS to claim FFP for its Medicaid expenditures.

6. The Form CMS-64 is a summary of actual expenditures derived from source documents including invoices, payment vouchers, governmental funds transfers, expenditure certifications, cost reports and settlements, and eligibility records. It does not include claim-level information.

7. Medicaid provider payment occurs at the state level; CMS does not directly pay providers. In the fee-for-service delivery system, the state Medicaid agency must conduct prepayment review for all claims received.[1] Additionally, in both the fee-for-service and managed care delivery systems, the state or the health plan respectively, must generally pay 90 percent of clean claims (i.e., claims that can be processed without obtaining additional information) within 30 days of the date of receipt.[2] Although CMS is not involved in the process, CMS therefore understands that a Medicaid provider in any given state can generally expect to receive payment from the state within 30 days of submitting a claim for service rendered to a Medicaid beneficiary.

8. Family planning services and supplies are a mandatory Medicaid benefit in accordance with Section 1905(a)(4)(C) of the Social Security Act. Family planning services must also be provided to individuals receiving Medicaid services through an Alternative Benefit Plan, as described in Section 1937(b)(7). This benefit can be provided in both the fee-for-service and managed care delivery systems.

---

[1] 42 CFR 447.45(f)
[2] 42 CFR 447.45(d)(2); 42 CFR 447.46(c). In a managed care delivery system, this requirement applies only to managed care organizations (MCOs), and the MCO and its providers may, by mutual agreement, establish an alternative payment schedule.

**State Expenditure Reporting and Claims for FFP**

9. To claim FFP, each state submits its aggregate expenditures on a quarterly basis to CMS electronically via the Medicaid Budget and Expenditure System (MBES) using the Form CMS-64. The state submits this form electronically to CMS 30 days after the end of each quarter (January 30, April 30, July 30, and October 30).

10. When submitting its quarterly expenditures, each state certifies that its expenditures are allowable under federal requirements. The Form CMS-64 consists of a series of forms that separate expenditures based on certain categories of services (typically aligned with statutorily defined benefit categories such as inpatient hospital services, nursing facility services, etc.). The Form CMS-64 is CMS's official accounting record of Medicaid expenditures.

11. CMS must assure that state expenditures claimed for federal matching funds under Medicaid are programmatically reasonable, allowable, and allocable in accordance with existing federal laws, regulations, and policy guidance. To achieve this, CMS relies primarily upon quarterly reviews of the Form CMS-64 performed by CMCS financial management staff across the country. The quarterly expenditure review process is complex, with up to 225 individual reporting lines for each state, which can result in over 1,000 pages of detailed expenditures each quarter. For each quarter, CMS Medicaid financial staff has 60 days to complete their review, including verifying the accuracy of reported expenditures; determining whether the expenditures are properly supported; verifying the authority for FFP in the expenditures; and verifying the federal match rate.

12. CMS has a standard National CMS-64 Review Guide which is used by staff to ensure consistency of the reviews. The Review Guide targets specific areas on which to focus the review, based on risk, while also providing flexibility for staff and managers to use their

professional discretion to expand or curtail the review based on the complexity of the state's program and issues identified during the review process.

13. Although review times may vary, it typically takes CMS up to 6 months from the date of submission of Form CMS-64 to pay any additional FFP requested by the state.

14. Section 1132(a) of the Social Security Act requires states to claim FFP for Medicaid and CHIP expenditures within two years of the date of the expenditure. Implementing regulations at 45 C.F.R. 95 Subpart A specify FFP will be available only if the state files a claim within two years after the calendar quarter in which the expenditures were made. Under certain limited circumstances, the Medicaid statute and regulations provide for exceptions to the two-year time limit. Section 1132(a) of the Act and regulations at 45 C.F.R. 95.19 specify that time limit does not apply for any claims that: (a) are an adjustment to prior year costs (this is limited to interim payments reconciled to actual cost); (b) result from an audit exception; (c) result from a court-ordered retroactive payment; or (d) for which the Secretary determines there was good cause for the failure by the state to file the claim within the time period.

**Medicaid Fee-for-Service**

15. In a fee-for-service delivery system, the state directly reimburses providers for each service delivered to Medicaid beneficiaries. States claim FFP for these costs from CMS.

16. The graphic below illustrates the payment relationship in a fee-for-service delivery system at a high level:



## Medicaid Managed Care

17. Managed care is the predominant delivery system for most Medicaid beneficiaries. In a managed care delivery system, the state contracts with risk-based health plans[3] to provide services to Medicaid beneficiaries who are enrolled in the plan (known as enrollees). The state executes a contract with one or more health plans, and this contract outlines the contractual responsibilities of the plan. The state pays health plans capitation payments for taking on these contractual obligations.

18. A capitation payment is a periodic payment (generally monthly), that a state makes to a health plan on behalf of each beneficiary enrolled under a contract, similar to a health insurance

---

[3] 42 CFR 2. There are three types of risk-based health plans (often referred to as managed care plans): (1) MCOs; (2) prepaid inpatient health plans (PIHPs); and prepaid ambulatory health plans (PAHPs). Generally, MCOs are comprehensive health plans while PIHPs and PAHPs are limited benefit plans.

6

premium paid in employer-sponsored insurance. The state makes this payment regardless of whether the particular beneficiary receives services during the period covered by the payment.

19. The health plan is responsible for contracting with a provider network, negotiating provider payment rates, and paying providers for covered services. Health plans are responsible for maintaining a sufficient provider network to meet the needs of the anticipated number of enrollees. In managed care, enrollees are generally restricted to only utilize the provider network of a health plan (i.e., network providers) with some exceptions for out-of-network providers. A network provider has a provider agreement with a health plan or subcontractor of that plan.[4] Network and out-of-network providers submit claims to the health plans for payment and health plans pay both network and out-of-network providers.

20. The graphic below illustrates the Medicaid managed care payment relationship at a high level:



---

[4] Definition of network provider in 42 CFR 438.2.

21. With respect to family planning specifically, Sections 1902(a)(23)(B) and 1915(b) of the Social Security Act allow Medicaid managed care enrollees to obtain family planning services and supplies from providers of their choice, including those out-of-network. Thus, in practice, when family planning services and supplies are included in managed care, enrollees receive family planning services from network providers and out-of-network providers, and both provider types are paid by the health plans.

\*    \*    \*

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct, to the best of my knowledge and belief.

Dated: _____July 14, 2025_____

_____
ANNE MARIE COSTELLO

*Digitally signed by Anne M. Costello -S*
*Date: 2025.07.14 15:29:03 -04'00'*