# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; PLANNED PARENTHOOD LEAGUE OF MASSACHUSETTS; and PLANNED PARENTHOOD ASSOCIATION OF UTAH,

        Plaintiffs,

v.

ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; MEHMET OZ, in his official capacity as ADMINISTRATOR OF THE CENTERS FOR MEDICARE & MEDICAID SERVICES; and CENTERS FOR MEDICARE & MEDICAID SERVICES,

        Defendants.

Case No. 1:25-cv-11913-IT

Leave to file granted on July 17, 2025

## PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

I.      The Defund Provision Is An Unconstitutional Bill Of Attainder ...................................... 1

II.     The Defund Provision Violates Equal Protection .............................................................. 4

III.    The Defund Provision Retaliates Against Planned Parenthood In Violation of The
        First Amendment ............................................................................................................... 6

IV.     The Defund Provision Does Not Reach The Non-Qualifying Members ............................ 9

        A.      The Non-Qualifying Members' Declaratory Judgment Claim Is Procedurally
                Proper ...................................................................................................................... 9

        B.      The Non-Qualifying Members Are Not "Affiliates" ............................................. 11

        C.      In The Alternative, The Defund Provision Is Void For Vagueness ....................... 12

        D.      Also In The Alternative, The Defund Provision Is An Unconstitutional
                Condition ............................................................................................................... 13

V.      Plaintiffs Have Established The Remaining Factors For Preliminary Relief ................... 15

VI.     Any Injunction Should Not Be Stayed, And A Nominal Bond Is Appropriate ............... 19

Reply in Support of Plaintiffs' Emergency Motion for TRO & PI

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abbott Laboratories v. Gardner*,
  387 U.S. 136 (1967)......................................................................................................10

*Aberdeen & Rockfish R. Co. v. Students Challenging Regulatory Agency
  Procedures*, 409 U.S. 1207 (1972) ..............................................................................20

*ACORN v. United States*,
  618 F.3d 125 (2d Cir. 2010).............................................................................................4

*Agency for International Development v. Alliance for Open Society International,
  Inc.* (*AOSI*), 570 U.S. 205 (2013) .............................................................................4, 15

*Barton v. Clancy*,
  632 F.3d 9 (1st Cir. 2011)..................................................................................................7

*Bates v. City of Little Rock*,
  361 U.S. 516 (1960).........................................................................................................14

*City & County of San Francisco v. U.S. Citizenship & Immigration Services*, 408
  F. Supp. 3d 1057 (N.D. Cal. 2019), *aff'd, San Francisco v. U.S.
  Citizenship & Immigration Services*, 981 F.3d 742 (9th Cir. 2020) ..........................16, 17

*Covidien LP v. Esch*,
  229 F. Supp. 3d 94 (D. Mass. 2017) ..............................................................................20

*Department of Education v. California*,
  145 S. Ct. 966 (2025).......................................................................................................20

*Eisenstadt v. Baird*,
  405 U.S. 438 (1972)............................................................................................................5

*Elrod v. Burns*,
  427 U.S. 347 (1976).........................................................................................................16

*Ex parte Young*,
  209 U.S. 123 (1908).........................................................................................................19

*Falmouth School Department v. Doe*,
  44 F.4th 23 (1st Cir. 2022)................................................................................................7

*FCC v. League of Women Voters of California*,
  468 U.S. 364 (1984).....................................................................................................14, 15

*Food Marketing Institute v. Argus Leader Media*,
    588 U.S. 427 (2019)............................................................................4

*Foretich v. United States*,
    351 F.3d 1198 (D.C. Cir. 2003) ......................................................4

*Fowler Packing Co. v. Lanier*,
    844 F.3d 809 (9th Cir. 2016) ..........................................................4

*Fraternal Order of Police Hobart Lodge No. 121, Inc. v. City of Hobart*,
    864 F.2d 551 (7th Cir. 1988) ..........................................................8

*G. & C. Merriam Co. v. Webster Dictionary Co.*,
    639 F.2d 29 (1st Cir. 1980) ...........................................................18

*Gattineri v. Town of Lynnfield*,
    58 F.4th 512 (1st Cir. 2023)............................................................7

*Healy v. James*,
    408 U.S. 169 (1972).......................................................................14

*In re Hubbard*,
    803 F.3d 1298 (11th Cir. 2015) ......................................................8

*International Association of Machinists & Aerospace Workers v. Eastern Airlines,
Inc.*, 925 F.2d 6 (1st Cir. 1991)...........................................................20

*Lyng v. International Union United Automobile, Aerospace & Agricultural
Implement Workers of America, UAW*, 485 U.S. 360 (1988) ...........................14

*McCue v. Bradstreet*,
    807 F.3d 334 (1st Cir. 2015)...........................................................7

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007).......................................................................10

*Mediplex of Mass., Inc., v. Shalala*,
    39 F. Supp. 2d 88 (D. Mass. 1999) ...............................................16

*National Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998).......................................................................13

*Nieves v. Bartlett*,
    587 U.S. 391 (2019).........................................................................8

*Nixon v. Administrator of General Services*,
    433 U.S. 425 (1977).........................................................................4

REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TRO & PI

*Peace Ranch, LLC v. Bonta,*
  93 F.4th 482 (9th Cir. 2024) ........................................................................10

*Planned Parenthood of Kansas, Inc. v. City of Wichita,*
  729 F. Supp. 1282 (D. Kan. 1990) .................................................................7

*Planned Parenthood of Mid-Missouri & Eastern Kansas v. Dempsey,*
  167 F.3d 458 (8th Cir. 1999) ........................................................................10

*Plyler v. Doe,*
  457 U.S. 202 (1982) ........................................................................................5

*Regal Knitwear Co. v. NLRB,*
  324 U.S. 9 (1945) ..........................................................................................18

*Reynolds v. Quiros,*
  990 F.3d 286 (2d Cir. 2021) ...........................................................................2

*Roberts v. U.S. Jaycees,*
  468 U.S. 609 (1984) ........................................................................................5

*Rocket Learning, Inc. v. Rivera-Sanchez,*
  715 F.3d 1 (1st Cir. 2013) ..............................................................................5

*Romer v. Evans,*
  517 U.S. 620 (1996) ........................................................................................6

*Rust v. Sullivan,*
  500 U.S. 173 (1991) ......................................................................................14

*Ryan v. U.S. Immigration & Customs Enforcement,*
  974 F.3d 9 (1st Cir. 2020) ............................................................................12

*SBT Holdings, LLC v. Town of Westminster,*
  547 F.3d 28 (1st Cir. 2008) ............................................................................6

*SeaRiver Maritime Financial Holdings, Inc. v. Mineta,*
  309 F.3d 662 (9th Cir. 2002) .........................................................................2

*U.S. Department of Agriculture v. Moreno,*
  413 U.S. 528 (1978) ........................................................................................6

*United States v. Brown,*
  381 U.S. 437 (1965) .....................................................................................2, 3

*United States v. Lovett,*
  328 U.S. 303 (1946) .....................................................................................2, 3

REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TRO & PI

*United States v. O'Brien*,
    391 U.S. 367 (1986)...................................................................................................8

*Victim Rights Law Center v. U.S. Department of Education*,
    2025 WL 1704311 (D. Mass. June 18, 2025) ..............................................................16

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)...........................................................................................12, 13

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000)...................................................................................................6

*Walling v. James V. Reuter Inc.*,
    321 U.S. 671 (1944)..................................................................................................18

*Walt Disney Parks & Resorts U.S., Inc. v. DeSantis*,
    716 F. Supp. 3d 1216 (N.D. Fla. 2024)........................................................................8

## STATUTES, RULES, AND REGULATIONS

42 U.S.C. § 1320a-7 ..........................................................................................................13

42 U.S.C. § 1320a-7a ................................................................................................10, 13

42 U.S.C. § 1320a-7b ......................................................................................................10

Fed. R. Civ. P. 65(c) ........................................................................................................20

Fed. R. Civ. P. 65(d) ........................................................................................................18

U.S. Const. amend. I ....................................................................................................8, 9

## OTHER AUTHORITIES

Michael T. Morley, *Erroneous Injunctions*, 71 Emory L.J. 1137, 1144 (2022)..........................19

Sen. Eric Schmitt (@SenEricSchmitt), X (July 8, 2025, 17:09 ET),
    https://x.com/SenEricSchmitt/status/1942692466932560188 .............................................2

Sen. Josh Hawley (@HawleyMO), X (July 8, 2025, 09:59 ET),
    https://x.com/HawleyMO/status/1942584355093897390 ...................................................2

Sen. Mike Lee (@BasedMikeLee), X (July 7, 2025, 20:18 ET),
    https://x.com/BasedMikeLee/status/1942377834590396612 ..............................................2

REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TRO & PI

The Defund Provision is the clear and unambiguous product of a decade-long government effort to unconstitutionally target and punish Planned Parenthood—the only nationwide membership organization of abortion providers, and one that has long been the face of the sexual and reproductive rights movement.  The text, purpose, and history of the statute make it plain. Congressional supporters underscored the point after this Court issued its Temporary Restraining Order—repeatedly faulting the Court for preventing them from "defunding Planned Parenthood."

The Defund Provision does not bar abortion providers generally from participating in the Medicaid program (which already prohibits federal funding for abortion except in the narrowest, statutorily authorized circumstances).  Instead, it uses a gerrymandered definition designed to capture Planned Parenthood specifically, leaving virtually all other abortion providers outside its scope.  Despite its various attempts at misdirection, the government ultimately contends that it reaches Planned Parenthood Members that do not even provide abortion themselves, warning that to continue qualifying as Medicaid providers, Planned Parenthood Members must "ceas[e] to provide for abortions" *and* "disaffiliat[e] with entities that do."  The Court should take the government and the statute's congressional proponents at their word:  This statute is intended to "defund Planned Parenthood," and it will unlawfully do so—with grave and irreparable harm to Planned Parenthood Members and their patients—absent a preliminary injunction from this Court.

## I.    THE DEFUND PROVISION IS AN UNCONSTITUTIONAL BILL OF ATTAINDER

Unable to credibly argue that the Defund Provision was not intended to punish Planned Parenthood, the government falls back on meritless technicalities as to why the bill of attainder framework purportedly does not apply.  Each fails.

*First*, the Defund Provision specifies Planned Parenthood.  Plaintiffs need not show that the statute singles out Planned Parenthood by name or by past conduct; instead, the question is

whether an entity is the "easily ascertainable" target of the law.  *See United States v. Brown*, 381 U.S. 437, 449 (1965) (quoting *United States v. Lovett*, 328 U.S. 303, 315 (1946)); *see also SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 669-70 (9th Cir. 2002).  As previously explained (Doc. No. 5 at 20), Planned Parenthood is the "easily ascertainable" target of the Defund Provision, a gerrymandered provision that allows virtually all abortion providers to remain in the Medicaid program other than Planned Parenthood Members.  Unable to help themselves, the Defund Provision's supporters in the Senate and House reaffirmed this indisputable point after the Court issued its Temporary Restraining Order—saying, again and again, that the bill "defunds Planned Parenthood."[1]  The government's claim (Doc. No. 53 at 11) that the Defund Provision reaches "at least two" additional entities changes nothing.  *See Reynolds v. Quiros*, 990 F.3d 286, 296-97 (2d Cir. 2021) (invalidating a law affecting ten similarly situated individuals as an unconstitutional bill of attainder); *see also SeaRiver*, 309 F.3d at 669-73 (invalidating a law affecting ten similarly situated entities on the same grounds).  The government does not dispute that these two additional entities were simply collateral damage in Congress's effort to punish Planned Parenthood—swept into the scope of the bill to get it past issues with the Senate Parliamentarian under the Byrd Rule.  Doc. No. 5 at 10, 20 n.15.

---

[1]     *See, e.g.*, Sen. Mike Lee (@BasedMikeLee), X (July 7, 2025, 20:18 ET) ("A judge has just issued a temporary restraining order 'TRO' halting the implementation of an unambiguous statute—duly enacted by Congress and signed into law by the President—that *defunds Planned Parenthood*.") (emphasis added), https://x.com/BasedMikeLee/status/1942377834590396612; Sen. Eric Schmitt (@SenEricSchmitt), X (July 8, 2025, 17:09 ET) ("Yesterday, another rogue judge tried to undermine the will of the people. Judge Indira Talwani issued a TRO enjoining portions of the OBBB that *defund Planned Parenthood*.") (emphasis added), https://x.com/SenEricSchmitt/status/1942692466932560188; Sen. Josh Hawley (@HawleyMO), X (July 8, 2025, 09:59 ET), ("A federal judge in Massachusetts has blocked Congress from *defunding Planned Parenthood*. This decision is so totally lawless, so completely at odds with the Constitution - Congress has the power of the purse under Article 1, NOT courts - as to approach grounds for impeachment.") (emphasis added), https://x.com/HawleyMO/status/1942584355093897390.

REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TRO & PI

The government is also wrong that a law must cover only past conduct in order to be a bill of attainder. The Supreme Court has recognized that some traditional bills of attainder "left the designated parties a way of escaping the penalty, [and] others did not." *Brown*, 381 U.S. at 442. The question is whether the targets of the legislative act are adequately specified. Here, they are. The outer bound of the set of "prohibited entit[ies]" *is* defined by reference to past conduct— whether they received more than $800,000 in Medicaid reimbursements in fiscal year 2023. And, in any event, the idea that all Planned Parenthood Members could just stop providing lawful abortions by October 1 is a false choice. Planned Parenthood's shared mission is to ensure access to sexual and reproductive health care for all people, including abortion. Doc. No. 1 at 3. It is also a false choice to suggest that every Planned Parenthood Member could "disaffiliat[e]" (Doc. No. 53 at 11)—that is, apparently, withdraw from Planned Parenthood membership—by October 1. In structuring the statute this way—with a last-minute amendment that moved the operative date from the date of enactment to October 1—Congress intended to create the illusion that Planned Parenthood Members could choose to come into compliance with the statute, when in fact ceasing abortion services would run contrary to their core mission, and being forced to give up their association with Planned Parenthood would run headlong into their First Amendment rights.

*Second*, the Defund Provision inflicts punishment on Planned Parenthood. The Supreme Court has recognized that specific bars on government employment constituted punishment, because it "seriously impaired [the targeted individuals'] chance to earn a living." *Lovett*, 328 U.S. at 314. The same is true here, where Planned Parenthood Members that have long worked to provide sexual and reproductive health care to all will no longer be able to treat the majority of their patients, with existential risks to their ability to continue operations. The Defund Provision also functions as punishment because it cannot reasonably be said to further nonpunitive legislative

3

purposes.  *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 475-76 (1977); *see also Foretich v. United States*, 351 F.3d 1198, 1222 (D.C. Cir. 2003).  The government argues that Congress has broad spending powers, but Congress cannot exercise that power in a manner that is irrational and unconstitutional, as is the case here.  *See, e.g., Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.* (*AOSI*), 570 U.S. 205, 213 (2013) (finding spending statute unconstitutional).[2]

*Third*, the legislative record is replete with evidence of an intent to punish Planned Parenthood, and the government cannot credibly claim otherwise.  The legislative history of previous, largely identical versions of the statute is relevant because it baldly demonstrates that the Defund Provision is merely the culmination of a decade-plus project to "defund" Planned Parenthood.[3]  The congressional statements post-enactment, which this Court also can and should consider, only reaffirm punitive intent.  *See Fowler Packing Co. v. Lanier*, 844 F.3d 809, 818-19 (9th Cir. 2016) (considering post-enactment statements in a bill of attainder analysis to assess congressional intent to punish).

## II.    THE DEFUND PROVISION VIOLATES EQUAL PROTECTION

The Defund Provision violates equal protection because it prohibits Planned Parenthood

---

[2]    The government's reliance on the Second Circuit's decision in *ACORN v. United States*, 618 F.3d 125 (2d Cir. 2010), is misplaced.  That case involved extreme facts—where Congress passed appropriation laws temporarily barring funds from going to ACORN while investigations of serious misconduct were ongoing—that do not map onto this case.  While Congress has an interest in ensuring that public funds are well-managed, the government has not invoked that interest here, and it could not.  And Congress, of course, does not have any valid interest in punishing Planned Parenthood for being the face of the abortion rights movement and offering lawful health services.

[3]    *Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427 (2019) (discussed at Doc. No. 53 at 14-15) is inapposite.  That case criticized consideration of legislative history of previous versions of a bill in support of a statutory interpretation that was contrary to the actually enacted plain text.  *Food Mktg. Inst.*, 588 U.S. at 437.  But for purposes of a bill of attainder claim, this Court must look to evidence of legislative intent to punish, and that evidence here is incontrovertible.

Members from receiving Medicaid payments based on their membership in PPFA while leaving virtually all other abortion providers untouched. Doc. No. 5 at 24-27. And because it impinges on Planned Parenthood's First Amendment right of association, the Defund Provision is subject to heightened scrutiny. *Id.* Not only is the Defund Provision "gerrymandered to single out PPFA's members" (Doc. No. 53 at 20), it goes even further to call out a "nationwide health care provider network"—language that is plainly intended to catch Planned Parenthood, even if it inaccurately accounts for Planned Parenthood's federated structure. *See* Doc. No. 5 at 25. In its opposition, the government not only fails to address this point, but now says the quiet part out loud—conceding that the only way for a Planned Parenthood Member to get out from under the prohibition is "ceasing to provide for abortions *and disaffiliating with entities that do*." Doc. No. 53 at 11 (emphasis added). In other words, according to the government, the only way for Planned Parenthood Members to be treated like other health care providers—including other abortion providers—is to end their association with Planned Parenthood. It is black letter law that the fundamental right to association is protected by the First Amendment. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618, 622 (1984). And it is just as clear that "[c]lassifications that impinge on 'fundamental rights' … are subject to strict scrutiny." *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 9 n.6 (1st Cir. 2013) (quoting *Plyler v. Doe*, 457 U.S. 202, 217 (1982)).

Since it "impinge[s] on 'fundamental rights,' including free speech rights," the Defund Provision must be "precisely tailored to a compelling government interest." *Rivera-Sanchez*, 715 F.3d at 9 n.6 (quoting *Plyler*, 457 U.S. at 217); *see also Eisenstadt v. Baird*, 405 U.S. 438, 447 n.7 (1972). The Defund Provision does not come close—it cannot even survive rational basis review. The government says the statute seeks to disfavor abortion. Doc. No. 53 at 21-23. But, even if true, the Defund Provision is not rationally related to that purported purpose. The Defund

Provision punishes *non*-abortion providers if they merely "affiliate" with an independently qualifying "prohibited entity."  At the same time, the Defund Provision says nothing about the hundreds of abortion providers who variously (1) operate for profit; (2) are not essential community providers; (3) are not "primarily engaged in family planning services, reproductive health, and related medical care;" or (4) received less than $800,000 in Medicaid reimbursement in fiscal year 2023—*only so long as they are not "affiliated" with Planned Parenthood*.

While the government attempts to defend each of these disqualifying factors individually, it offers no rational reason why Congress would have included all four other than to impermissibly target and punish Planned Parenthood.  The government is also wrong that these provisions taken together serve to target "[l]arger providers" that "carry out more abortions."  Doc. No. 53 at 22. None of the requirements are tied to the number of abortions actually provided, and the vast majority of abortion providers, accounting for the majority of abortions provided, are *not* covered. The Defund Provision's layered classification scheme rationally relates only to the government's "bare … desire to harm" Planned Parenthood, which is not a legitimate, much less compelling, reason for singling them out.  *See Romer v. Evans*, 517 U.S. 620, 632-34 (1996) (quoting *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1978)).  Planned Parenthood "has been intentionally treated differently from others similarly situated" that provide abortions, and "there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 34-35 (1st Cir. 2008).

## III.  THE DEFUND PROVISION RETALIATES AGAINST PLANNED PARENTHOOD IN VIOLATION OF THE FIRST AMENDMENT

The Defund Provision violates the First Amendment under the established doctrinal test for retaliation because (1) PPFA and its Members "engaged in constitutionally protected conduct;" (2) they were "subjected to adverse [government] action;" and (3) "the protected conduct was a

substantial or motivating factor in the adverse action." *Gattineri v. Town of Lynnfield*, 58 F.4th

512, 514 (1st Cir. 2023) (quoting *Falmouth Sch. Dep't v. Doe*, 44 F.4th 23, 47 (1st Cir. 2022));

*see* Doc. No. 5 at 28-29. None of the government's arguments undermine these points.

*First*, Planned Parenthood has long been a prominent voice in the national discourse on

sexual reproductive health issues and targeted for that reason. *See, e.g.*, *Planned Parenthood of

Kan., Inc. v. City of Wichita*, 729 F. Supp. 1282, 1287-88 (D. Kan. 1990) (finding, 35 years ago,

that a local resolution "singles out Planned Parenthood on the basis of its advocacy of certain

unpopular ideals").

*Second*, halting hundreds of millions in Medicaid reimbursements would "deter a

reasonably hardy individual" from expressing himself and qualifies as adverse action. *McCue v.

Bradstreet*, 807 F.3d 334, 339 (1st Cir. 2015) (quoting *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir.

2011)). The government protests (Doc No. 53 at 15, 18) that the Defund Provision does not

regulate present expressive activity. But that assertion is incorrect and irrelevant. The Defund

Provision reaches providers by virtue of their association, even when for expressive purposes. *See

infra* Section IV.D. And even if the Defund Provision did not regulate present expressive activity,

that is beside the point. What matters is that speech and association motivated the adverse action,

not that the adverse action regulates speech.

*Third*, Planned Parenthood's protected political speech "was a substantial or motivating

factor in the adverse action." *Gattineri*, 58 F.4th at 514 (quoting *Falmouth Sch. Dep't*, 44 F.4th at

47). The government insists (Doc. No. 53 at 23) that Congress targeted "major abortion

providers." But, as explained, the statute's coverage does not turn on the number of abortions

provided; in fact, many Planned Parenthood Members perform few, and others none at all. Instead,

by the government's logic, the statute deploys a series of qualifications designed to capture all

Members, some just by association.  These contorted conditions and the long train of attempts specifically to "defund Planned Parenthood" (Doc. No. 5 at 8-15) demonstrate that the Defund Provision unconstitutionally retaliates against Planned Parenthood based on its protected First Amendment activity.

Unable to overcome the First Amendment retaliation test, the government tries to sidestep it.  It argues that this Court ought not strike down "an otherwise constitutional statute on the basis of an alleged illicit motive."  Doc. No. 53 at 16 (quoting *United States v. O'Brien*, 391 U.S. 367, 383 (1986)).  But *O'Brien* did not say legislative motives do not matter.  To the contrary, it expressly sanctioned "look[ing] to statements by legislators for guidance" in a "class of cases where the very nature of the constitutional question requires an inquiry into legislative purpose," most notably, "those in which statutes have been challenged as bills of attainder."  *O'Brien*, 391 U.S. at 383 & n.30.  Like their bill of attainder claim, Plaintiffs' First Amendment retaliation claim similarly requires an inquiry into legislative purpose, making such an assessment not only proper but necessary.  *See, e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (requiring "retaliatory animus").[4]

It is of no moment here that the Defund Provision came from Congress.  The First Amendment provides that "Congress shall make no law … abridging the freedom of speech."  U.S.

---

[4]     The out-of-circuit decisions cited by the government (Doc. No. 53 at 16-17) also provide it no help.  All three *accept* an inquiry into legislative motives where—as here—laws single out a group.  *See Fraternal Ord. of Police Hobart Lodge No. 121, Inc. v. City of Hobart*, 864 F.2d 551, 556 (7th Cir. 1988) ("[W]here a statute or ordinance does not have the generality characteristic of legislation … a more beady-eyed examination of motive is appropriate."); *In re Hubbard*, 803 F.3d 1298, 1314 (11th Cir. 2015) (allowing an inquiry into legislative motive for "acts of governmental retaliation that explicitly single out a specific group"); *Walt Disney Parks & Resorts U.S., Inc. v. DeSantis*, 716 F. Supp. 3d 1216, 1226 (N.D. Fla. 2024) (when a law "explicitly single[s] out a discrete group," it is not "constitutional on its face").

Const. amend. I.  Congress abridges First Amendment freedoms when it passes a punitive statute in retaliation for First Amendment conduct.  Here, it has done just that.

IV.   **THE DEFUND PROVISION DOES NOT REACH THE NON-QUALIFYING MEMBERS**

   A.   **The Non-Qualifying Members' Declaratory Judgment Claim Is Procedurally Proper**

The government lodges a number of procedural challenges to the Non-Qualifying Members' claims, none of which is correct.

The Non-Qualifying Members have an actual case or controversy before this Court.  It is disingenuous for the government to argue that CMS "has had no opportunity to analyze" the Defund Provision to determine whether it applies to the Non-Qualifying Members.  The Trump Administration has repeatedly made clear that it intends to "defund" Planned Parenthood.  *See supra* Part I; Doc. No. 1 ¶¶ 77-95.  It is also incorrect to say that the Non-Qualifying Members face no harm until October 1.  While a "prohibited entity" is purportedly defined as of that date, the statute is drafted to cover conduct retrospectively back to "the date of the enactment of this Act," *i.e.*, July 4.  As such, for Members that will keep providing abortions or will keep "affiliat[ing]" with other Planned Parenthood Members (whatever the government interprets that to mean), they must immediately stop submitting claims to Medicaid absent an injunction, lest those claims retroactively be deemed unlawful.  Without a continued injunction, this puts Members in the untenable position of either turning Medicaid-insured patients away or providing their care without knowing if they will ever be reimbursed for it.

If that were not enough, while the government may claim that there is no threat of enforcement under the Defund Provision, the elephant in the room is the threat that the government will (unjustifiably and unlawfully) seek to hold Planned Parenthood Members liable for submitting false claims—subjecting Members to the threat of treble civil damages, penalties, and even

criminal liability. *See, e.g.*, 42 U.S.C. §§ 1320a-7a, 1320a-7b. Absent an injunction, the Members will be coerced into ceasing to submit claims for services provided to Medicaid patients, or ceasing to provide that care altogether. "The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 152 (1967)).

The government is also wrong that "Plaintiffs identify no cause of action." Doc. No. 53 at 26. The government essentially concedes that it is unclear whether the Non-Qualifying Members are covered by the statute, highlighting that the statute could cover any Member that is "closely associated with another." *Id.* at 39. Such an interpretation would be unconstitutional, as set forth in Counts 5 and 6 of the Complaint (Doc. No. 1 ¶¶ 164-75), and this Court has the authority at this stage in the case to enjoin the application of the Defund Provision to the Non-Qualifying Members in order to maintain the status quo. It is also permissible for this Court to interpret the statute as a matter of constitutional avoidance, *see, e.g.*, *Planned Parenthood of Mid-Missouri & Eastern Kansas v. Dempsey*, 167 F.3d 458, 463 (8th Cir. 1999) (constitutional avoidance counseled against interpreting state law as "prohibit[ing] grantees from having any affiliation with abortion service providers"), and also for Plaintiffs to bring declaratory judgment and constitutional claims in the alternative, *see Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 488-90 (9th Cir. 2024) (plaintiff had standing to seek declaratory and injunctive relief based on the argument that the statute was unconstitutional, and in the alternative, that the statute did not apply to plaintiff).[5]

---

[5]    The government's last argument that "a declaratory judgment is inappropriate at the preliminary-injunction stage" (Doc. No. 53 at 26) is beside the point. Even if this Court did not want to finally adjudicate the meaning of the statute at this stage, it can, and should, determine that the Non-Qualifying Members are likely to succeed on the merits of their declaratory judgment

**B.      The Non-Qualifying Members Are Not "Affiliates"**

Mere lines after arguing that the Non-Qualifying Members lack a case or controversy to seek declaratory relief, the government asserts that the Defund Provision "could apply" to the Non-Qualifying Members.  Doc. No. 53 at 27-28.  That is wrong.

*First*, seemingly agreeing with Plaintiffs' understanding that "affiliate" requires corporate control, the government seeks to construe PPFA's membership standards and offers one former Member's 2010 bylaws as proof that PPFA exercises "control" over its members.  Doc. No. 53 at 28-29.[6]  But the government ignores the evidence of PPFA's structure.  PPFA is a membership organization, and its Members vote to appoint the PPFA Board of Directors and approve changes to PPFA's bylaws and membership standards.  *See* Doc. No. 5 at 32 (citing Doc. No. 5-1 ¶¶ 10, 13, 15).  This reinforces that PPFA does not manage, direct, or oversee its Members.  *See* Doc. No. 5 at 32.

*Second*, that Planned Parenthood elsewhere refers to its Members colloquially as "affiliates" does not mean that they satisfy the legal definition of "affiliate" under the Defund Provision.  Just as calling someone your partner does not make you a legal partnership under the tax code, referring to members of a federation as "affiliates" does not make them legal affiliates under the Defund Provision.

*Third*, contrary to what the government claims (Doc. No. 53 at 29-30), the Court need not,

---

claim, and preliminarily enjoin enforcement of the statute as to the Non-Qualifying Members in order to maintain the status quo while the case proceeds.

[6]      The government hinges its argument that PPFA controls members on a concededly "outdated" copy of Planned Parenthood of New Mexico's ("PPNM") Bylaws.  Doc. No. 53 at 28-29.  As an initial matter, PPNM does not currently exist.  The excerpts from PPNM's Bylaws, more importantly, are consistent with policies generated with the input of all Members as described in Plaintiffs' motion.  Doc. No. 5 at 32.

REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TRO & PI

and should not, provide for discovery before granting the requested preliminary relief. Courts are not called to "conclusively determine the merits of the movant's claim" to grant a preliminary injunction; Plaintiffs are merely required to put forth enough evidence for the Court to "evaluate the likelihood vel non that the movant ultimately will prevail on the merits." *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020). Plaintiffs have offered sworn, unrebutted declarations that detail the relationships among PPFA and its Members, and these provide the Court with sufficient facts to determine the likelihood of success at this preliminary stage.

### C.    In The Alternative, The Defund Provision Is Void For Vagueness

If the Court declines to determine that the Defund Provision is inapplicable to the Non-Qualifying Members, then it should find the Defund Provision void for vagueness as applied to those Non-Qualifying Members. Even the government admits, "[t]he 'non-qualifying members' can only speculate that HHS and CMS (or certain states) will interpret the statute to apply to them and deny payment or reimbursement." Doc. No. 53 at 25. Moreover, to rebut the Non-Qualifying Members' vagueness challenge, the government relies on distinguishable and inapplicable case law and seemingly forgets that Plaintiffs assert this claim only in the alternative to the request for declaratory relief.

The government argues that a vagueness claim requires identification of a specific property interest. Not so. It is the threat of civil enforcement or criminal liability that gives rise to the Non-Qualifying Members' claims. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499-500 (1982) (recognizing range of contexts in which vagueness challenges can arise, including under civil enforcement schemes). Moreover, the First Amendment implications underlying this vagueness challenge require that the Court apply a stringent vagueness test here. "[T]he most important factor affecting the clarity that the Constitution demands of a law is whether

it threatens to inhibit the exercise of constitutionally protected rights[,] for example … the right of free speech or association." *Id.* at 499.

*National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), upon which the government relies, is distinguishable. The Supreme Court acknowledged in *Finley* that the government may need to use terms that are "undeniably opaque" when it is selectively patronizing "excellence," as in the arts or in academics, with federal grants, but reiterated that in a "criminal statute or regulatory scheme," such terms are prohibited. *Id.* at 588-89. The Medicaid program is highly regulated, with statutes and regulations that aim to establish objective criteria for who can submit claims for Medicaid reimbursement, and which impose penalties for incorrectly doing so. *See, e.g.*, 42 U.S.C. §§ 1320a-7, 1320a-7a. Those terms must be established with clarity to avoid infringing upon the Non-Qualifying Members' Due Process rights.

**D.    Also In The Alternative, The Defund Provision Is An Unconstitutional Condition**

As to the Non-Qualifying Members' unconstitutional conditions claim, the government's own framing of the Defund Provision reveals its unconstitutional design. According to the government, for Planned Parenthood Members to escape exclusion from the Medicaid program, they must "disaffiliat[e]" with other Members that provide abortions. *See* Doc. No. 53 at 11. A broad interpretation of "affiliates" (beyond corporate ownership and control)—which, notably, the government does not disavow—would bring Non-Qualifying Members within the ambit of the Defund Provision only by virtue of their protected associational activities—specifically, their association with Qualifying Members for the purpose of advancing and advocating for mutually held ideas and causes.

The government argues that the Defund Provision "does not 'order' affiliates not to associate together for any purpose, and it does not 'prevent' them from associating together." Doc.

No. 53 at 33.  But as the government recognizes, the purpose of the unconstitutional conditions doctrine is to "prevent[ ] the government from coercing people into giving ... up" constitutionally enumerated rights by withholding benefits, and to ensure that the government does not "attempt[ ] to pressure the person into doing" what "the government could not have constitutionally ordered." *Id.* at 34.  That is exactly how the Defund Provision operates.

Congress cannot order one Planned Parenthood Member not to associate with another in furtherance of their shared mission and common advocacy goals.  Neither can Congress use Medicaid eligibility as a weapon to coerce Planned Parenthood Members into giving up their protected associational rights. *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960) (associational rights "are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference"); *Healy v. James*, 408 U.S. 169, 183 (1972) (associational rights can be abridged even by government actions that do not directly restrict individuals' ability to associate freely); *Lyng v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 485 U.S. 360, 367 n.5 (1988) (same).  Offering purported safe harbor to Non-Qualifying Members if they simply "disaffiliate" from their national advocacy network is no offer at all.  *See Healy*, 408 U.S. at 183.

And contrary to what the government contends (Doc. No. 53 at 35), Plaintiffs' claim is consistent with *Rust v. Sullivan*, 500 U.S. 173 (1991), and *FCC v. League of Women Voters of California*, 468 U.S. 364 (1984).  In *Rust*, the Supreme Court held that a regulation that left "the grantee unfettered in its other activities" outside of the Title X project did not impose an unconstitutional condition.  500 U.S. at 196; *see also* Doc. No. 5 at 36.  And in *FCC*, the Supreme Court recognized that noncommercial educational broadcasting stations would not be unconstitutionally burdened if the statute permitted them "to segregate [their] activities" or

"establish 'affiliate' organizations" outside of the statute's prohibitions.  468 U.S. at 400.  Here,

because the Non-Qualifying Members by definition do not otherwise satisfy the statutory criteria,

a broad interpretation of the word "affiliates" in the Defund Provision would leave them no option

to avoid the statute's penalties other than by "disaffiliating" from Qualifying Members—

regardless of whether that protected association occurs within or outside of the Medicaid program.

The government suggests "there is no reason to think" that the Defund Provision will be

read broadly and, in any event, it "may never matter."  Doc. No. 53 at 34.  This is nonsensical.  As

Plaintiffs have explained at length, the Trump Administration has made clear its intention to

defund Planned Parenthood and, contrary to the government's assertion, there is no reason to think

the Administration will change its mind and read the Defund Provision narrowly.  *See e.g.*, *supra*

Part I.  Indeed, the government could have disavowed this interpretation here.  It did not do so.

The immediate and obvious threat of a broad interpretation of the Defund Provision is compounded

by the risk of retrospective enforcement, including potentially for false claims (notwithstanding

that such retrospective claims would be meritless and brought in bad faith).  *Id.*  The unavoidable

reality is that, absent an injunction, Non-Qualifying Members will be left with an impossible

choice—either abandon their constitutionally protected rights or risk penalties and prosecution.

That is unconstitutional coercion and warrants immediate redress.  *AOSI*, 570 U.S. at 214-17.[7]

## V.    PLAINTIFFS HAVE ESTABLISHED THE REMAINING FACTORS FOR PRELIMINARY RELIEF

### A.    Absent an Injunction, Plaintiffs Face Irreparable Harm

The government does not contest that "the loss of First Amendment freedoms," even for a

---

[7]      The government also relies on *Railroad Commission of Texas v. Pullman Co.*, to argue that Plaintiffs' First Amendment claim is not ripe for adjudication because "affiliate" has not yet been interpreted.  312 U.S. 496 (1941); Doc. No. 53 at 34.  *Pullman* permits federal courts to abstain from hearing constitutional claims when presented with "unresolved questions *of state law*," and is thus irrelevant here.

minimal period, is an irreparable injury.  *See* Doc. No. 5 at 38-39 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  The government, however, argues that Plaintiffs "rely on alleged harms to third parties to demonstrate irreparable harm."  Doc. No. 53 at 39.  Though it is true that a million or more Medicaid recipients will be harmed absent injunctive relief, the government misstates Plaintiffs' position and the law.  Plaintiffs argue that Planned Parenthood Members face irreparable harm to their patient relationships, goodwill, and reputation.  Doc. No. 5 at 15-18, 39, 41.  The termination of Medicaid funding will terminate Planned Parenthood Members' relationships with some of their patients, not to mention their employees.  If Members are forced to "reduce the[ir] hours and vital programs they offer, terminate staff members, and eventually close health centers," "their close relationship with patients will have been severely disrupted."  Doc. No. 5 at 39; *see also Victim Rts. L. Ctr. v. U.S. Dep't of Educ.*, 2025 WL 1704311, at *18 (D. Mass. June 18, 2025) (granting injunctive relief where plaintiff had to turn down clients, divert expenses and time from critical tasks core to its mission, and would suffer damage to its reputation, "all of which show irreparable harm").  Moreover, the Court is permitted to consider irreparable harms to third parties where, as here, Plaintiffs' interests are closely intertwined with those of the third party.  *See Mediplex of Mass., Inc., v. Shalala*, 39 F. Supp. 2d 88, 99 (D. Mass. 1999) ("Mediplex has an interest in protecting the health of its residents and may assert harm to them as irreparable harm for the purpose of this motion.").

The government's argument that Planned Parenthood cannot demonstrate harm to its mission and existence is also without merit.  Doc. No. 53 at 37-39.  The "severe[ ] disrupt[ion]" of the Members' relationships with their patients will limit the Members' ability to "provid[e] vital health care to the community."  Doc. No. 5 at 39, 41; *City & Cnty. of S.F. v. U.S. Citizenship & Immigr. Servs.*, 408 F. Supp. 3d 1057, 1126 (N.D. Cal. 2019) (finding irreparable harm where the

challenged action "plainly hinders their clients' ability to obtain [the organizations' services] and/or public benefits."), *aff'd* 981 F.3d 742 (9th Cir. 2020). Plaintiffs have submitted sworn declarations that Members will be forced to curtail services, lay off staff, and are at risk of closing clinics. In the few days the Defund Provision was in effect, Members had already begun turning away Medicaid patients. Doc. No. 5 at 41; Doc. No. 5-1 ¶ 4.[8]

Finally, as this Court has already recognized, undisputed evidence has "established that widespread disruptions to patient care would occur" in the absence of injunctive relief. Doc. No. 46 at 3. Among other things, the Defund Provision will jeopardize care for the over a million Planned Parenthood Member patients who receive health services through Medicaid—all for non-abortion services, such as cancer screenings, contraception, and STI testing and treatment. Doc. No. 5-5 ¶ 35; Doc. No. 5-1 ¶¶ 49-50. The government does not, and cannot, dispute these devastating facts.[9]

**B.    Preliminary Injunction Will Redress Planned Parenthoods' Claims**

The government also argues that an injunction is inappropriate because it would not redress Plaintiffs' claims. Doc. No. 53 at 41. But redressability is a concept of standing, not of preliminary injunctive relief, and the government does not argue Plaintiffs lack standing. In any event, any injunction ordered against the named Defendants would also bind state agencies. Injunctions are

---

[8]    There is no merit to the government's suggestion that a preliminary injunction is unnecessary because Planned Parenthood Members could seek reimbursement for covered services performed after this litigation ends. As the government notes, there is a statute of limitations on claims through Medicaid. *Id.* Regardless, setting aside the First Amendment harms that are irreparable if not enjoined even for a short period, the declarations submitted in support of Planned Parenthood's Motion clearly demonstrate that operations at Planned Parenthood Members' health care centers would be imminently and significantly curtailed, if not shuttered, without an immediate injunction against the Defund Provision. *See* Doc. No. 5 at 38-45.

[9]    For similar reasons, the balance of equities and public interest continue to favor Planned Parenthood. *See* Doc. No. 5 at 55-56.

enforceable against parties acting in active concert or participation with enjoined parties who have actual notice of the injunction. Fed. R. Civ. P. 65(d). This rule prevents enjoined parties from nullifying a court order by carrying out prohibited acts through third parties. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945).

A nonparty is "acting in active concert" with an enjoined party when it is knowingly aiding or abetting the enjoined party's violation of the injunction or the nonparty is legally identified with the enjoined party. *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 35 (1st Cir. 1980). That is readily satisfied here. If the government is enjoined from unlawfully withholding federal Medicaid funds from Planned Parenthood, a state agency that seeks to withhold those same funds from Planned Parenthood would be per se aiding and abetting the activity the named Defendants were enjoined from carrying out.

State agencies are also clearly legally identified with the Defendants, who by statute control state agencies' administration of the federal Medicaid funds at issue. *Regal Knitwear Co.*, 324 U.S. at 14 ("[A] decree of injunction not only binds the parties defendant but also those identified with them … in privity … or subject to their control."); *Walling v. James V. Reuter Inc.*, 321 U.S. 671, 674 (1944) (injunctions apply to "those to whom the business may have been transferred, whether as a means of evading the judgment or for other reasons"). Indeed, to comply with this Court's Temporary Restraining Order, the Deputy Director for the Center for Medicaid & CHIP Services sent an email to all state Medicaid and CHIP Directors, alerting them that "the Department and its 'agents, employees, appointees, successors, and anyone acting in concert or participation with' the Department" cannot enforce the Defund Provision against Planned Parenthood Members. Ex. 1. There is no reason the government could not continue providing direction to State Medicaid programs on how federal funds may be distributed.

It is therefore fully within this Court's equitable authority to issue an injunction that directly binds state agencies that administer the federal Medicaid funds at issue, as well as to direct Defendants to issue notice to state agencies involved in the disbursement of Medicaid funding that the Defund Provision is not enforceable against Planned Parenthood Members and so does not prevent the state agencies from reimbursing otherwise eligible claims.

Contrary to the government's redressability arguments, this Court also has equitable authority to ensure complete relief by making clear that Plaintiffs are entitled to retain payments lawfully issued under this Court's injunction. Any action predicated on claims submitted during that time period would violate Planned Parenthood Members' rights under the Due Process Clause, by depriving them of reimbursements for care they lawfully provided through the Medicaid program in reliance on the Court's injunction. *See, e.g.*, *Ex parte Young*, 209 U.S. 123, 130-32 (1908) (plaintiff must be able to test the legality of government action in court without fear that an unsuccessful effort would produce "penalties for disobedience" that "are so enormous … as to intimidate … from resorting to the courts"); Michael T. Morley, *Erroneous Injunctions*, 71 Emory L.J. 1137, 1144 (2022) ("[E]ven an erroneous injunction that is no longer in effect permanently limits the manner and extent to which a wrongfully enjoined party may retroactively enforce its rights against the plaintiff for the plaintiff's actions while the injunction was in force."). And as this Court found in its TRO Order in imposing a nominal bond, it would award the government funds for care it was obligated to cover, whether provided by Planned Parenthood Members or (if patients are able to find them) other Medicaid providers. Doc. No. 46 at 8.

## VI.    ANY INJUNCTION SHOULD NOT BE STAYED, AND A NOMINAL BOND IS APPROPRIATE

This Court should grant a preliminary injunction, and it should not be stayed. PPFA and its Members have made the required showing that they will suffer irreparable harm if the Defund Provision goes into effect. *See Aberdeen & Rockfish R. Co. v. Students Challenging Regul. Agency*

*Procs.*, 409 U.S. 1207, 1218 (1972) ("*SCRAP*") (denying application of stay of a preliminary injunction based on the irreparable harm expected and the weighing of harms).

The Court properly concluded that only a nominal bond is required in this action (and the bond has already been posted) (Doc. No. 55), and the government provides no reason for the Court to revisit that holding. An injunction bond is "not mandatory," and courts have "substantial discretion" to fashion a bond's terms. Fed. R. Civ. P. 65(c); *see also Covidien LP v. Esch*, 229 F. Supp. 3d 94, 100 (D. Mass. 2017) (citing *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991)).

The Court properly determined that preliminary injunctive relief "does not compel Defendants to spend money they would not otherwise spend," and, thus, only required Planned Parenthood to post a nominal bond. Doc. No. 46 at 8. That decision should not be disturbed. The government's proposition that Plaintiffs should post a bond "based on Planned Parenthood's estimates of the amount of Medicaid reimbursements its members receive each month" is absurd. Doc. No. 53 at 43. If Planned Parenthood Member health centers continue to see and provide services to Medicaid patients throughout the duration of this litigation, any Medicaid reimbursement entitlements will be accrued in exchange for those services. The government's proposition essentially suggests that, to maintain the status quo ordered by the Court, Planned Parenthood Members, who collectively serve over a million Medicaid patients a year, provide those services for free. Such a result would be inconsistent with the Court's purpose of maintaining the status quo as the claims in this litigation are resolved.[10]

---

[10]    The government's reliance on *Department of Education v. California*, 145 S. Ct. 966, 968-69 (2025), is inapposite. Unlike the plaintiffs in that case, which were recipients of federal "grants," Planned Parenthood Members receive reimbursements for services rendered.

REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION for TRO & PI

Dated:  July 17, 2025

Respectfully submitted,

/s/ Alan Schoenfeld

Alan Schoenfeld*
Cassandra A. Mitchell*
Alex W. Miller*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com
cassie.mitchell@wilmerhale.com
alex.miller@wilmerhale.com

Emily Nestler*
PLANNED PARENTHOOD
  FEDERATION OF AMERICA, INC.
1110 Vermont Avenue, NW
Washington, D.C.  20005
Tel.: (202) 973-4800
emily.nestler@ppfa.org

Jennifer Sandman*
C. Peyton Humphreville*
Kyla Eastling*
PLANNED PARENTHOOD
  FEDERATION OF AMERICA, INC.
123 William Street
New York, NY 10038
Tel.: (212) 441-4363
jennifer.sandman@ppfa.org
peyton.humphreville@ppfa.org
kyla.eastling@ppfa.org

Sharon K. Hogue, BBO# 705510
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
sharon.hogue@wilmerhale.com

Albinas J. Prizgintas*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

*Pro hac vice application granted.

Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

Counsel for Plaintiffs hereby certify that a true and correct copy of this document has been served on all counsel of record through the Court's ECF system on July 17, 2025.

Dated:  July 17, 2025

*/s/ Alan Schoenfeld*
Alan Schoenfeld

REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TRO & PI