## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

PLANNED PARENTHOOD FEDERATION
OF AMERICA, INC., *et al.*,

                    *Plaintiffs*,

     v.

ROBERT F. KENNEDY, JR., in his official
capacity as SECRETARY OF THE U.S.
DEPARTMENT OF HEALTH AND HUMAN
SERVICES, *et al.*,

                    *Defendants*.

No. 1:25-cv-11913-IT

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY
## PRELIMINARY INJUNCTIONS PENDING APPEAL

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 3

I.     The Government Is Overwhelmingly Likely to Prevail on the Merits ............................. 3

     A.     Section 71113 Is Not a Bill of Attainder ................................................. 3

     B.     Plaintiffs' Other Claims Are Meritless ................................................... 9

II.     The Equities Favor a Stay ...................................................................................... 15

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez,*
    585 U.S. 579 (2018)……………………………………………………………………6

*ACORN v. United States,*
    618 F.3d 125 (2d Cir. 2010) ...................................................................... 4, 5

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,*
    570 U.S. 205 (2013)...................................................................... 4, 13, 15

*Alberico v. United States,*
    783 F.2d 1024 (Fed. Cir. 1986) .............................................................. 9, 14

*Am. Pub. Health Ass'n v. Nat'l Institutes of Health,*
    2025 WL 2017106 (1st Cir. July 18, 2025)................................................... 2

*Arcara v. Cloud Books, Inc.,*
    478 U.S. 697, 705 (1986) .........................................................................11

*Arizona v. Biden,*
    40 F.4th 375 (6th Cir. 2022)...................................................................... 16

*Bowen v. Kendrick,*
    483 U.S. 1304 (1987)....................................................................... 2, 14, 15

*Communist Party of U.S. v. Subversive Activities Control Bd.,*
    367 U.S. 1 (1961)........................................................................... 6, 7, 8, 9

*Cummings v. Missouri,*
    71 U.S. 277 (1866)..................................................................................... 5

*District 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo,*
    18 F.4th 38 (1st Cir. 2021) ....................................................................... 14

*Dobbs v. Jackson Women's Health Org.,*
    597 U.S. 215 (2022)................................................................................... 7

*Elgin v. U.S. Dep't of Treasury,*
    641 F.3d 6 (1st Cir. 2011).................................................................... 3, 14

*FCC v. League of Women Voters of California,*
    468 U.S. 364 (1984)...............................................................................11, 12

*Flemming v. Nestor,*
    363 U.S. 603 (1960)............................................................................. 5, 6

*González-Droz v. González-Colón,*
    660 F.3d 1 (1st Cir. 2011) .................................................................. 14

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) ............................................................................... 5

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) .......................................................................... 13

*Nixon v. Adm'r of Gen. Servs.,*
    433 U.S. 425 (1977) ................................................................... 3, 5, 6

*Nken v. Holder,*
    556 U.S. 418 (2009) ...................................................................... 3, 14

*NLRB v. SW. Gen., Inc.,*
    580 U.S. 288 (2017) ............................................................................ 6

*United States v. O'Brien,*
    391 U.S. 367 (1968) ...........................................................................11

*Regan v. Taxation With Representation of Washington,*
    461 U.S. 540 (1983) ...........................................................................11

*Rust v. Sullivan,*
    500 U.S. 173 (1991) ............................................................................ 5

*Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.,*
    468 U.S. 841 (1984) ....................................................................... 3, 4

*Trump v. Boyle,*
    No. 25A11, 2025 WL 2056889 (U.S. July 3, 2025) .......................... 2, 15

*Trump v. CASA, Inc.,*
    145 S. Ct. 2540 (2025) ................................................................. 15, 16

*Turner Broadcasting System, Inc. v. FCC,*
    507 U.S. 1301 (1993) .......................................................................... 2

*Williamson v. Lee Optical of Oklahoma, Inc.,*
    348 U.S. 483 (1955) .......................................................................... 14

*Williams-Yulee v. Fla. Bar,*
    575 U.S. 433 (2015) .......................................................................... 14

## **Statutes**

7 U.S.C. § 136a-1(i)(E)(II) .................................................................... 10

12 U.S.C. § 1841(k) ............................................................................................................... 10

15 U.S.C. § 1693o-2 ............................................................................................................. 10

16 U.S.C. § 620e(5) .............................................................................................................. 11

21 U.S.C. § 350g ................................................................................................................... 10

26 U.S.C. § 414(b) ............................................................................................................... 10

29 U.S.C. § 1301(a)(14) ...................................................................................................... 10

42 U.S.C. § 16452(b) ........................................................................................................... 11

50 U.S.C. § 4611(b)……………………………………………………………………….10

# INTRODUCTION

This Court's preliminary injunctions bar the government from enforcing an Act of Congress that established a new limit on Medicaid spending. All three democratically elected parts of the federal government concluded that the Medicaid program should no longer subsidize certain large abortion providers. The Court recognized that under Article I of the Constitution, Congress holds broad discretion to control federal spending. Yet it entered injunctions compelling the government to distribute taxpayer dollars to entities that are not statutorily entitled to receive them based on a federal policy against subsidizing abortion.

Rarely if ever has an Act of Congress been enjoined on such flimsy grounds. This Court deemed the Medicaid funding restriction at issue here a bill of attainder. But the Supreme Court has only applied the Bill of Attainder Clause five times in its history—on each occasion in cases involving extraordinary laws punishing groups such as Confederates and Communist Party members. Halting federal subsidies bears no resemblance to the severe punishments—including death, banishment, and imprisonment—previously understood as implicating the Clause. And the funding restriction is also not a bill of attainder for the independent reason that it refrains from designating particular individuals for punishment and instead adopts a generally applicable definition of prohibited entities that focuses on future activity.

This Court's fallback First Amendment holding is no more plausible. The Court appeared to recognize that the core statutory provisions, which define entities prohibited from receiving Medicaid funding without regard to any expressive activity, do not implicate the First Amendment. It nonetheless believed that the definition of "prohibited entity"—which includes an entity's "affiliates" and "subsidiaries"—transforms the entire enactment into an intrusion on constitutionally protected association. But because money is fungible, extending the funding

1

restriction to affiliates prevents an organization from undermining federal policy not to subsidize abortion providers by shifting funds between entities that do not perform abortions and entities that do. For that reason, Congress often promulgates similar provisions ensuring that regulated entities cannot create affiliates and then use them to evade statutory requirements. Those provisions have never been understood as raising First Amendment concerns. In any event, any concerns regarding the statute's affiliate provision would not justify the injunction as issued, which sweeps far beyond the small number of entities that may qualify only as affiliates.

An immediate stay is warranted. The Supreme Court has recognized a strong presumption that "Acts of Congress … should remain in effect pending a final decision on the merits" by the Supreme Court. *Turner Broadcasting System, Inc. v. FCC*, 507 U.S. 1301, 1302 (1993) (Rehnquist, C.J., in chambers) (quotation marks omitted). Indeed, in "virtually all" cases where a lower court has held a federal statute unconstitutional, the Supreme Court has "granted a stay if requested to do so by the Government." *Bowen v. Kendrick*, 483 U.S. 1304, 1304 (1987) (Rehnquist, C.J., in chambers); *cf. Trump v. Boyle*, No. 25A11, 2025 WL 2056889 (U.S. July 3, 2025). That is particularly appropriate here, where the injunctions displace the democratically elected branches' judgment that abortion providers should not benefit from taxpayer dollars, thus intruding both on Congress's Article I authority over federal spending and on the Executive's Article II authority to enforce the law.

Under these circumstances, the government respectfully renews its request that this Court stay its preliminary injunctions pending appeal. *See* Defs.' Mem. at 44, Dkt. No. 53 (requesting stay pending appeal); July 21 Order, at 33–35 (denying stay request); July 28 Order, at 56–57, Dkt. No. 69 (denying stay request); *see also Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 2025 WL 2017106, at *8 (1st Cir. July 18, 2025) (requiring the government to raise all arguments in

2

support of stay pending appeal in its stay motion).[1]  The government respectfully requests a ruling

on this motion by this Monday, August 11, 2025, so that it may promptly request relief from the

First Circuit, if necessary.  Plaintiffs oppose this motion.

## ARGUMENT

A stay pending appeal is plainly warranted.  The government is likely to succeed on the

merits and will face irreparable injury absent a stay, and the balance of equities and public interest

support a stay.  *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

### I.    The Government Is Overwhelmingly Likely to Prevail on the Merits

### A.  Section 71113 Is Not a Bill of Attainder

The Supreme Court has only applied the Bill of Attainder Clause to hold a statute

unconstitutional on five occasions, all of which involved extraordinary laws concerning

Confederates, Communist Party members, or "subversives."  *See Elgin v. U.S. Dep't of Treasury*,

641 F.3d 6, 19 (1st Cir. 2011) (Stahl, J., concurring) (collecting cases).  This Court nonetheless

believed that the Medicaid funding restriction at issue here qualifies as a bill of attainder.  For a

statute to implicate the Clause, it must (1) "inflict[] punishment" (2) "on an identifiable

individual."  *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 846-47

(1984).  Neither requirement is satisfied.

**1.** Section 71113 advances Congress's "nonpunitive legislative purpose[]" of ending

Medicaid funding for certain abortion providers.  *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425,

475-76 (1977).  Under Article I of the Constitution, Congress holds "broad discretion" to control

federal spending by "impos[ing] limits on the use of such funds to ensure they are used in the

---

[1] The government seeks a stay of both preliminary injunctions, *see* Dkt. Nos. 62, 69, pending appeal.  *See* Dkt. Nos. 63, 75 (notices of appeal).  The references herein are to the latter memorandum and order, which reiterated the Court's earlier findings.  *See* July 28 Order, at 2 n.2.

manner Congress intends." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013) (*AID*).  Congress exercised that discretion by establishing that federal Medicaid funds cannot be distributed to "prohibited entities," a term defined by reference to whether as of October 1, 2025, an entity provides elective abortions, is covered by Section 501(c)(3) of the Internal Revenue Code, is an essential community provider primarily engaged in certain functions, and received over $800,000 in federal and state Medicaid funds in 2023.  139 Stat. at 300.  This provision reflects Congress's decision not to allocate federal Medicaid funds to a category of entities that provide a large number of abortions.

Halting the flow of federal Medicaid funds to those entities bears no resemblance to the forms of punishment that implicate the Bill of Attainder Clause.  Historically, bills of attainder involved punishments such as "death," "banishment," and "imprisonment." *Selective Service*, 468 U.S. at 852.  By contrast, the "withholding of appropriations"  is not "a traditional form of punishment that is considered to be punitive per se." *ACORN v. United States*, 618 F.3d 125, 137 (2d Cir. 2010).  The Second Circuit, for example, has rejected a bill-of-attainder challenge to several appropriations laws barring federal funds from going to ACORN, a non-profit corporation, and its affiliates due to the organization's mismanagement.  *See id*. at 131.  The Court correctly explained that "[i]n comparison to" historical punishments, "a temporary disqualification from funds . . . may be more an inconvenience than punishment." *Id*. at 137.  This Court should apply the same analysis and reach the same result here.  Indeed, Section 71113 is even more clearly not a bill of attainder than the provision at issue in *ACORN*, which withheld appropriations from the organization based on *past* mismanagement.  *See id.* at 130–31.  By contrast, withholding funds based on future conduct is not punishment at all but a refusal to subsidize.

In nonetheless concluding that Section 71113 imposes punishment, this Court equated that provision with historical laws "barring designated . . . groups from participation in specified employments or vocations."  July 28 Order, at 37 (quoting *Nixon*, 433 U.S. at 474).  But Section 71113 does nothing of the kind.  Rather, Plaintiffs may continue to provide whatever medical services they wish to whichever patients they wish—they simply may not use federal funds to do so.  Just as the Second Circuit held, "[p]laintiffs are not prohibited from any activities; they are only prohibited from receiving federal funds" *if* they continue to perform abortions.  *ACORN*, 618 F.3d at 135; *see Flemming v. Nestor*, 363 U.S. 603, 617 (1960) (holding that a statute was not punitive where "the sanction [wa]s the mere denial of a noncontractual government benefit").

That Section 71113 comes nowhere near imposing punishment under the Bill of Attainder Clause is illustrated by the Civil War-era case on which this Court relied.  *See* July 28 Order, at 38 (citing *Cummings v. Missouri*, 71 U.S. 277 (1866)).  In *Cummings,* the Supreme Court invalidated a state law that forced ex-Confederates to choose between forgoing their chosen professions or imprisonment.  *See* 71 U.S. 317.  Section 71113, by contrast, simply requires prohibited entities to carry on without further federal subsidies (or to stop providing abortions and continue receiving federal funds).  "Forbidden legislative punishment is not involved merely because [a statute] imposes burdensome consequences."  *Nixon*, 433 U.S. at 472.

It was likewise error for the Court to declare that because longstanding federal law "already bars federal funding of elective abortion," Section 71113 "does little to further its purported non-punitive ends."  July 28 Order, at 39.  Congress reasonably decided to halt federal Medicaid funding to certain large abortion providers.  Because "[m]oney is fungible," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010), Congress could reasonably conclude that withholding Medicaid funding from entities that perform abortions will discourage at least some

of those abortions.    Moreover, Congress is not compelled to subsidize activities with which it disagrees.  *See Rust v. Sullivan*, 500 U.S. 173, 192-93 (1991) ("[T]he government may 'make a value judgment favoring childbirth over abortion, and . . . implement that judgment by the allocation of public funds.'").

Similarly unfounded is the Court's conclusion that Congress acted with an "intent[] to punish."   July 28 Order, at 40.   "[O]nly the clearest proof could suffice to establish the unconstitutionality of a statute on [the] ground [of legislative motivation.]"  *Flemming*, 363 U.S. at 617.  Yet the Court relied on "the least illuminating forms" of evidence.  *NLRB v. SW. Gen., Inc.*, 580 U.S. 288, 307 (2017).  "[F]loor statements by individual legislators" are hardly a reliable guide to the intent of a 535-member body.  *Id.*  For similar reasons, bills introduced in 2017 and 2023 (*see* July 28 Order, at 40) shed little light on a statute enacted years later.  *See Abbott v. Perez*, 585 U.S. 579, 604–05 (2018).  In any event, the statements and bills the Court cited are fully consistent with Congress's nonpunitive objective of reallocating Medicaid funding to providers that don't perform abortions and meet the other statutory criteria.   *See, e.g.*, July 28 Order, at 40 ("Reconciliation legislation offers an important opportunity to stop funding abortion purveyors like Planned Parenthood" (citing 171 Cong. Rec. E255 (daily ed. Mar. 27, 2025) (statement of Rep. Christopher H. Smith))).

**2.** Plaintiffs' bill-of-attainder claim fails for the independent reason that Section 71113 does not single out "identifiable individual[s]" for punishment.  *Nixon*, 433 U.S. at 468.  To satisfy this requirement, a statute must either refer to an individual "by name" or "describe[] [them] in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 86 (1961).

Section 71113 does not refer to Planned Parenthood by name. It also refrains from defining prohibited entities based on "past conduct" and instead focuses on future activity. *Communist Party*, 367 U.S. at 87. "So long as the incidence of legislation is such that the persons who engage in the regulated conduct . . . can escape regulation merely by altering the course of their own present activities, there can be no complaint of an attainder." *Id*. at 88. That is the case here: because Section 71113 turns on whether an entity meets various requirements "as of" several months after the Section's enactment, 139 Stat. at 300, plaintiffs "can escape regulation" by altering their activities, *Communist Party*, 367 U.S. at 88. Most obviously, plaintiffs could cease to provide abortions (an activity in which they are not constitutionally entitled to engage, *see Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 232 (2022)). In addition, they could instead relinquish Section 501(c)(3) or essential-community-provider status.

This Court largely disregarded this aspect of Section 71113 and failed to distinguish *Communist Party*. It acknowledged that the provision makes funding dependent on whether an entity "provides elective abortion as of October 1," 2025—*i.e.*, future activity. July 28 Order, at 34. But it erroneously seized on the fact that the universe of entities subject to that prospective requirement is determined in part by reference to a "retrospective characteristic[]"—namely, whether an entity received "$800,000 in Medicaid reimbursements in 2023." *Id.* (citing 139 Stat. at 300). But that aspect of Section 71113 is not aimed at punishing entities that received more than $800,000 in Medicaid funding in 2023. Rather, it merely limits the scope of the provision's potential application to future conduct, based on an objective, numerical criterion. In a similar vein, under the statute upheld in *Communist Party*, "activity engaged in prior to the enactment of the legislation [was] regarded administratively and judicially as relevant" in determining whether the law applied to a given entity. 367 U.S. at 187. That did not alter the conclusion that the statute

in *Communist Party* permissibly "turn[ed] upon continuing contemporaneous fact"—not "past and ineradicable actions"—because its application "endure[d] only so long as[] an organization presently conducts operations of a described character." *Id.* That statute was not a bill of attainder for that reason, and neither is Section 71113.

Much of this Court's discussion relies on the semantic exercise of labelling the statutory definition of prohibited entities as itself a form of punishment. The Court declared, for example, that "the law establishes a class of entities and requires only those entities to stop providing abortion . . . to continue receiving federal funds." July 28 Order, at 34. But as explained above, the restriction's application to entities that received more than $800,000 in Medicaid funds in 2023 does not punish them for having received those funds. Rather, carving out entities that received fewer Medicaid funds from the restriction's reach merely exempts those entities from a nonpunitive regulation of future conduct, thereby easing the restriction's administrative burden and allowing the relevant agencies and the states to focus on otherwise-qualifying abortion providers that receive substantial sums of federal Medicaid funding.

That Section 71113 does not designate plaintiffs for punishment is especially apparent given that it will likely encompass "at least two" entities unrelated to Planned Parenthood. July 28 Order, at 14, 33. This Court assigned no weight to the law's inclusion of non-Planned Parenthood entities largely because a 2017 bill that it viewed as a precursor to Section 71113 expressly named Planned Parenthood. July 28 Order, at 33. But the fact that Congress considered but ultimately rejected that approach and instead adopted a generally applicable definition that encompasses non-Planned Parenthood entities is, if anything, a reason to uphold rather than invalidate the law.

At bottom, the Court's order appears to find the identification requirement is satisfied so long as Congress understood that Section 71113 would likely apply to many (or all) Planned Parenthood members. But it is not unusual for Congress to legislate with a particular example in mind and to draw a statute's boundaries in a way that will predictably include that example. Unless Congress takes the additional step of defining a punitive prohibition so that a particular entity is "ineradicabl[y]" included, the Bill of Attainder Clause does not apply. *Communist Party*, 367 U.S. at 86-88; *cf. Alberico v. United States*, 783 F.2d 1024, 1028 (Fed. Cir. 1986) (rejecting a bill of attainder claim where legislation was "certainly inspired by" the plaintiff but was not "directed specifically at him").

### B. Plaintiffs' Other Claims Are Meritless

Plaintiffs' remaining claims rely on the flawed premise that the funding restriction impinges on the First Amendment. That Section 71113 makes anodyne reference to an entity's "affiliates" and "subsidiaries" in defining a "prohibited entity" does not transform the entire provision into an intrusion on the First Amendment's protection of expressive association. July 28 Order, at 3. And Section 71113's definition of "prohibited entity" raises no First Amendment concern at all, much less a concern that would justify the expansive injunctions based on unconstitutional conditions, July 21 Order, at X, and the Equal Protection Clause, *id.* at X; July 28 Order, at X.[2]

**1.** As the Court recognized, Section 71113's core provisions do not implicate the First Amendment. As discussed, those provisions halt federal Medicaid funding to prohibited entities, a term defined without regard to speech or any other expressive activity. Thus, Section 71113's ordinary operation raises no First Amendment concern.

---

[2] This Court declined to reach plaintiffs' First Amendment retaliation claim. *See* July 28 Order, at 49. That claim is meritless. *See* Gov't PI Opp., Dkt. No. 53, at 15-20.

Congress's inclusion of a provision that prevents prohibited entities from using the corporate form to evade the funding restriction does not implicate the First Amendment. That provision—a statutory definition—specifies that a prohibited entity is "an entity, including its affiliates, subsidiaries, successors, and clinics" that meets certain criteria. 139 Stat. at 300. Without this provision, a prohibited entity could create subsidiaries or affiliates and then use them to obtain federal Medicaid funds, frustrating Congress' objective of withholding taxpayer dollars from certain large abortion providers.

Section 71113's reference to affiliates thus has nothing to do with First Amendment association and instead ensures that the funding limitation cannot be defeated by corporate structure. In general, an affiliate is a "corporation that is related to another corporation by shareholdings or other means of control." Affiliate, Black's Law Dictionary (12th ed. 2024). Congress has adopted this definition in various statutory provisions referring to an entity's affiliates. *See, e.g.*, 12 U.S.C. § 1841(k) (for the purposes of certain banking regulations, an affiliate is "any company that controls, is controlled by, or is under common control with another company"). This understanding of an affiliate fits well here, where Section 71113 refers not just to affiliates but also to an entity's "subsidiaries, successors, and clinics." Each of those entities is normally subject to the control of another company and could therefore be used to obtain federal Medicaid funds to subsidize that company's provision of abortion (or any other activity that Congress has declined to fund).

It is common for Congress to include similar provisions in federal statutes, and those provisions have never been regarded as raising First Amendment concerns. For example, some parts of the Internal Revenue Code and Employee Retirement Income Security Act regulate all corporations subject to the same "control." 26 U.S.C. § 414(b); *see* 29 U.S.C. § 1301(a)(14).

Likewise, laws that provide benefits only to smaller businesses often disqualify entities using definitions that include a company's "affiliates" to prevent manipulation by larger businesses. *See e.g.*, 21 U.S.C. § 350g; 15 U.S.C. § 1693o-2; 7 U.S.C. § 136a-1(i)(E)(II). Other provisions extending statutory requirements to regulated entities' affiliates pervade the United States Code. *See, e.g.*, 50 U.S.C. § 4611(b) (extending sanctions for certain export-control violations to any "affiliate, subsidiary, and successor" of the sanctioned entity); 16 U.S.C. § 620e(5) (extending conservation requirements to "any subsidiary, subcontractor, or parent company, and [certain] business affiliates" of covered entities); 42 U.S.C. § 16452(b) (extending record-keeping requirements for public-utility holding companies to "each affiliate" or "subsidiary" of those companies). The government is unaware of any decision casting doubt on the constitutionality of such provisions—which would, based on this Court's analysis, be equally unconstitutional if applied to Planned Parenthood members. Rightly so; even if Section 71113's speech-neutral regulation incidentally burdens Planned Parenthood members because, as they claim, they have adopted a particular corporate structure for expressive reasons, such an incidental burden does not violate the First Amendment where the government acts to regulate non-expressive activity, as it has done here. *See United States v. O'Brien*, 391 U.S. 367, 377 (1968); *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705 (1986).

This Court's contrary approach misapplies Supreme Court precedent and misunderstands Section 71113 itself. Mere statutory reference to an entity's affiliates does not amount to an intrusion on the First Amendment's protection of expressive association. *See* July 28, Order, at 26. Under this theory, the numerous federal and state laws that refer to corporate subsidiaries, parents, and affiliates would be subject to stringent review under the First Amendment. Indeed, even Section 71113's reference to an entity's "subsidiaries" would presumably trigger heightened

11

scrutiny.  139 Stat. at 300.  The First Amendment does not create a system in which Congress can withhold funds from a defined set of entities but is powerless to prevent subsidies to those entities' affiliates and subsidiaries.

This Court's cited Supreme Court cases highlight the absence of support for that approach. *See* July 28 Order, at 28-29 (citing *see Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983); *FCC v. League of Women Voters of California*, 468 U.S. 364, 366 (1984)).  Those cases involved laws requiring the recipients of federal funds to refrain from certain expressive activities, including lobbying, *see Regan*, 461 U.S. at 542, and "editorializing," *FCC*, 468 U.S. at 366.  In both cases, the Supreme Court recognized that the resulting First Amendment concerns would be alleviated if the government permitted the regulated entities to lobby and editorialize through their affiliates.  *See Regan*, 461 U.S. at 543; *FCC*, 468 U.S. at 400-01.  That principle has no bearing here, where Section 71113 does not require Medicaid recipients (i.e. providers) to refrain from any form of expressive activity.

Other aspects of the Court's orders improperly conflate Section 71113's reference to an entity's affiliates with a regulation of "Planned Parenthood Federation['s]" "membership."  July 28 Order, at 30.  The Court concluded that "membership in Planned Parenthood is expressive" and emphasized that members collaborate to "advocate[] before Congress," "communicate[] with the public," and "support[] [political] campaigns."  *Id.*  at 26-27.  But none of that matters to Section 71113.  If Planned Parenthood members wish to collaborate for the purpose of advocacy, praise or endorse each other publicly, participate in events, or issue joint press releases, doing so will not affect the application of Section 71113.  Congress was instead concerned with the non-expressive activities of corporate control and financing.

12

Nor does PPFA's licensing policy raise any First Amendment concern in this case. The Court highlighted that "each Member licenses the Planned Parenthood name, which expresses that each Member stands for particular values." July 28 Order, at 27. But licensing the Planned Parenthood name does not alone transform an entity into an affiliate—nor does it necessarily constitute First Amendment protected activity. Section 71113 does not preclude any entity from expressing its support for Planned Parenthood's values—for example, by posting signs invoking the Planned Parenthood name. And to the extent PPFA refuses to license that name to entities unless they cede legal control to PPFA, that licensing restriction is attributable to PPFA itself, not Section 71113.

Even if Section 71113 implicated the associational rights of affiliates, that would not support the scope of this Court's injunction. In its initial order, the Court acknowledged that this theory would, at most, justify relief for the small number of Planned Parenthood members that are not prohibited entities in their own right but that may qualify as affiliates of entities that independently satisfy the statutory definition. *See* July 21 Order, at 35. In its second order, however, the Court indicated that it now viewed the theory as supporting relief for "all Plaintiffs[]," July 28 Order, at 3, as well as all Planned Parenthood members. But the Court did not explain why a First Amendment concern regarding the statute's application to a handful of unusual Planned Parenthood members would justify an injunction barring the statute's application to every member of that group. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (holding that to satisfy the "rigorous standard" governing facial First Amendment challenges, a plaintiff must show that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep").

**2.** Because plaintiffs' unconstitutional-conditions and equal-protection claims rely on the First Amendment theory refuted above, those claims fail.

As to the unconstitutional-conditions claim, Congress holds authority to "specify the activities [it] wants to subsidize" so long as it does not "seek to leverage funding to regulate speech outside the contours of the [funded] program itself." *AID*, 570 U.S. at 214-15; *see* July 28 Order, at 27. This Court nonetheless concluded that defining a prohibited entity to encompass an entity and its affiliates together is "unrelated to the scope" of the Medicaid program. July 28 Order, at 28. But Congress was not regulating the act of affiliation or the acts of the non-abortion-providing affiliates. Rather, it was making funding decisions—which are indisputably within the challenged program—based on a complete understanding of how federal funds might directly or indirectly contribute to abortions given the fungibility of money.

As to the equal-protection claim, this Court also suggested that, wholly apart from the burden on association, Section 71113 may not even withstand rational-basis review. That underscores the extent of the Court's departure from established principles. Under that highly deferential standard, "legislation is presumed to be valid and will be sustained if the classification drawn . . . is rationally related to a legitimate state interest." *González-Droz v. González-Colón*, 660 F.3d 1, 9 (1st Cir. 2011) (citation omitted). This Court doubted whether there is a "rational relationship" between Section 71113 "and the goal of reducing abortion." July 28 Order, at 47. But halting federal subsidies to one category of abortion providers plainly serves that goal. *See Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489 (1955) ("[Congress may] take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind."). And although this Court questioned why restricting funding only to essential community providers "is in any way related to reducing abortion," *see id.* at 48, the Supreme Court

14

has rejected such underinclusivity arguments even under strict scrutiny, *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 451–52 (2015). In any event, those providers—which primarily serve low-income, medically underserved individuals—are most likely to have many Medicaid patients, therefore justifying the administrative burdens associated with identifying prohibited entities.

## II.    The Equities Favor a Stay

The Court's injunction threatens significant and irreparable harm to the government, *see Nken*, 556 U.S. at 435, which outweighs any claimed injury to plaintiffs.

The preliminary injunction inflicts serious harm on the government. There is a traditionally strong "presumption of constitutionality which attaches to every Act of Congress." *Bowen v. Kendrick*, 483 U.S. 1304, 1304 (1987) (Rehnquist, C.J., in chambers). "[A]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *District 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (citation omitted). Thus, in "virtually all" cases where a lower court has held a federal statute unconstitutional, the Supreme Court has "granted a stay if requested . . . by the Government." *Bowen*, 438 U.S. at 1304 (Rehnquist, C.J., in chambers); *cf. Trump v. Boyle*, No. 25A11, 2025 WL 2056889 (U.S. July 23, 2025) (the Supreme Court's interim orders "inform how a court should exercise its equitable discretion in like cases"). That approach is especially appropriate here, where the injunction both interferes with Congress's power over federal spending, *see AID*, 570 U.S. at 213, and "improper[ly] intrude[s]" on the Executive Branch's authority and ability to enforce the law, *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2561 (2025).

Respectfully, this Court erred in downplaying these harms. Although the Court acknowledged that "[t]here is a significant public interest in the implementation of duly enacted statutes," it depicted the government's injury here as "minimal" because it "has a negligible impact

15

on the federal budget." July 28 Order, at 53. But Congress adjusts federal spending for many reasons other than reducing the overall budget deficit. It did so here, based on its determination that taxpayer dollars should not be allocated to certain organizations that perform elective abortions—conduct that many Americans find morally abhorrent and do not wish to subsidize. The judicial branch is ill-equipped to second-guess Congress's judgment that halting funding to certain large abortion providers serves the public interest. And the Court's related statement that its order "does not require the government to expend funds for services other than those the government has approved" is similarly mistaken: each democratically elected component of the federal government has concluded that prohibited entities should not receive federal Medicaid funds. *Id*.

On the other side of the ledger, the Court's belief that the balance of hardships favors plaintiffs depended in significant part on its mistaken view of the merits. *See* July 28 Order, at 52-54. For the reasons given above, however, Section 71113 readily passes constitutional muster. *See Bowen*, 483 U.S. at 1304 (Rehnquist, C.J., in chambers) (the presumption of constitutionality "is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of [the government] in balancing hardships"). Plaintiffs have no cognizable interest in obtaining federal funds to which they are not legally entitled. And although the Court briefly suggested (July 28 Order, at 54) that the injunction may prevent "disruption in patient care and corresponding adverse health outcomes," it failed to explain why Plaintiffs could not continue providing these services with other funding sources or why Medicaid patients would not be able to obtain care from healthcare providers that are not prohibited entities under Section 71113.

**CONCLUSION**

For the foregoing reasons, this Court should stay the preliminary injunctions entered on July 21, Dkt. No. 62 and July 28, Dkt. No. 69, pending Defendants' appeal to the First Circuit.

Dated: August 7, 2025                     Respectfully submitted,

                                          BRETT A. SHUMATE
                                          Assistant Attorney General
                                          Civil Division

                                          YAAKOV M. ROTH
                                          Principal Deputy Assistant Attorney General
                                          Civil Division

                                          ERIC J. HAMILTON
                                          Deputy Assistant Attorney General
                                          Civil Division

                                          EMILY M. HALL
                                          ELIZABETH HEDGES
                                          TIBERIUS DAVIS
                                          Counsel to the Assistant Attorney General
                                          Civil Division

                                          MICHELLE R. BENNETT
                                          Assistant Director
                                          Federal Programs Branch

                                          BRADLEY P. HUMPHREYS
                                          JACOB S. SILER
                                          Trial Attorneys
                                          Federal Programs Branch

                                          /s/ Elisabeth J. Neylan
                                          ELISABETH J. NEYLAN
                                          Trial Attorney (N.Y. Bar Reg. No. 6125736)
                                          Federal Programs Branch
                                          1100 L Street NW
                                          Washington, DC 20005
                                          Phone: (202) 616-3519

Elisabeth.J.Neylan@usdoj.gov

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 7, 2025, the foregoing pleading was filed electronically through the CM/ECF system, which causes all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

_/s/ Elisabeth J. Neylan_
Elisabeth J. Neylan
Trial Attorney
United States Department of Justice
