# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

PLANNED PARENTHOOD FEDERATION
OF AMERICA, INC.; PLANNED
PARENTHOOD LEAGUE OF
MASSACHUSETTS; and PLANNED
PARENTHOOD ASSOCIATION OF UTAH,

                Plaintiffs,

v.

ROBERT F. KENNEDY, JR., in his official
capacity as SECRETARY OF THE U.S.
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; U.S. DEPARTMENT
OF HEALTH AND HUMAN SERVICES;
MEHMET OZ, in his official capacity as
ADMINISTRATOR OF THE CENTERS
FOR MEDICARE & MEDICAID
SERVICES; and CENTERS FOR
MEDICARE & MEDICAID SERVICES,

                Defendants.

Case No. 1:25-cv-11913-IT

# PLAINTIFFS' RESPONSE IN OPPOSITION TO
# MOTION TO STAY PRELIMINARY INJUNCTIONS PENDING APPEAL

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

PROCEDURAL BACKGROUND........................................................................... 1

ARGUMENT .......................................................................................................... 2

    I.      The Government Has Not Met Its Burden For Reconsideration ............................ 2

    II.     The Government Is Not Entitled To A Stay Of The Court's Preliminary Injunctions Pending Appeal .................................................................................... 6

            A.      Plaintiffs Have Established A Likelihood of Success On The Merits ........ 7

            B.      The Remaining Factors Weigh Heavily Against A Stay .......................... 11

CONCLUSION...................................................................................................... 12

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO STAY PRELIMINARY INJUNCTIONS

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acevado-García v. Vera-Monroig,*
    296 F.3d 13 (1st Cir. 2002) ................................................................. 7

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l,*
    570 U.S. 205 (2013) ............................................................................ 7

*Am. Pub. Health Ass'n v. Nat'l Insts. of Health,*
    2025 WL 2017106 (1st Cir. July 18, 2025) ...................................... 4

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) .......................................................................... 10

*Communist Party of U.S. v. Subversive Activities Control Bd.,*
    367 U.S. 1 (1961) ............................................................................... 5

*Connection Distrib. Co. v. Reno,*
    154 F.3d 281 (6th Cir. 1998) ........................................................... 12

*Coronavirus Rep. v. Apple, Inc.,*
    560 F. Supp. 3d 642 (D.N.H. 2021) .................................................. 4

*Disaster Sols., LLC v. City of Santa Isabel,*
    21 F.4th 1 (1st Cir. 2021) ................................................................... 5

*Eisenstadt v. Baird,*
    405 U.S. 438 (1972) .......................................................................... 10

*Ellis v. United States,*
    313 F.3d 636 (1st Cir. 2002) ............................................................. 4

*Fernández-Vargas v. Pfizer,*
    522 F.3d 55 (1st Cir. 2008) ............................................................... 3

*FCC v. League of Women Voters of Cal.,*
    468 U.S. 364 (1984) ........................................................................... 6

*Fla. Youth Conservation Corps v. Stutler,*
    2006 WL 1835967 (N.D. Fla. June 30, 2006) .................................. 9

*Guadalupe-Baez v. Pesquera,*
    819 F.3d 509 (1st Cir. 2016) ............................................................. 3

*Homans v. City of Albuquerque,*
    264 F.3d 1240 (10th Cir. 2001) ................................................. 11, 12

*Joelner v. Village of Washington Park*,
    378 F.3d 613 (7th Cir. 2004) ........................................................11

*Legend Night Club v. Miller*,
    637 F.3d 291 (4th Cir. 2011) ........................................................11

*Mazza v. City of Boston*,
    2025 WL 1224112 (D. Mass. Apr. 28, 2025) ...............................4, 6

*N.H. Indonesian Cmty. Support v. Trump*,
    765 F. Supp. 3d 102 (D.N.H. 2025)..............................................4

*NAACP v. Alabama*,
    357 U.S. 449 (1958)......................................................................8

*New Jersey v. Trump*,
    131 F.4th 27 (1st Cir. 2025).........................................................7

*New York v. Trump*,
    133 F.4th 51 (1st Cir. 2025).........................................................7

*Nken v. Holder*,
    556 U.S. 418 (2009)...................................................................6, 7

*O'Brien v. Lowell Gen. Hosp.*,
    749 F. Supp. 3d 209 (D. Mass. 2024) ........................................3

*Palmer v. Champion Mortg.*,
    465 F.3d 24 (1st Cir. 2006)..........................................................3

*Planned Parenthood of Cent. N.C. v. Cansler*,
    877 F. Supp. 2d 310 (M.D.N.C. 2012) ......................................9

*Plyler v. Doe*,
    457 U.S. 202 (1982)...................................................................10

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)......................................................................8

*Regan v. Tax'n With Representation of Wash.*,
    461 U.S. 540 (1983)......................................................................6

*Rocket Learning, Inc. v. Rivera-Sánchez*,
    715 F.3d 1 (1st Cir. 2013)...........................................................10

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*,
    309 F.3d 662 (9th Cir. 2002) .......................................................8

*Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.*,
    468 U.S. 841 (1984)......................................................................................8

*Somerville Pub. Schs. v. McMahon*,
    139 F.4th 63 (1st Cir. 2025).....................................................................4, 11

*Sullivan v. Dumont*,
    391 F. Supp. 3d 161 (D. Mass. 2019) .............................................................3

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
    2020 WL 1429853 (D. Mass. Mar. 24, 2020)...................................................4

*Trump v. Boyle*,
    2025 WL 2056889 (U.S. July 23, 2025)..........................................................4

*United States v. Allen*,
    573 F.3d 42 (1st Cir. 2009)...........................................................................3

*United States v. Brown*,
    381 U.S. 437 (1965)......................................................................................9

**DOCKETED CASES**

*Planned Parenthood Fed'n of Am. v. Kennedy*,
    Nos. 25-1698, 25-1755 (1st Cir.) ...................................................................2

**OTHER AUTHORITIES**

Benner, *Most Planned Parenthood Clinics Are Ineligible for Medicaid Money
    After Court Ruling*, N.Y. Times (July 22, 2025) ...............................................1

## INTRODUCTION

This Court has twice considered and denied the government's request to stay enforcement of the Court's preliminary injunctions pending appeal.  Thus, as the Court recognized, the government's present motion is properly construed as a request for reconsideration.  But the government offers no basis for the Court to revisit its prior Orders.  Instead, faulting the Court for its "flimsy" reasoning, the government just repeats flawed theories that the Court has already rejected.  Even if this Court were to consider the government's arguments anew, they are wrong for all the reasons previously articulated in the Court's decisions.  And in fact, since this Court issued its decision, the government has now admitted that Section 71113 (the "Defund Provision") was intended to punish Planned Parenthood for its "political advocacy."[1]  Plaintiffs have established a likelihood of success on the merits of their claims, and the risks of irreparable harm remain dire.  By contrast, in the absence of a stay, the government is required only to continue reimbursing Planned Parenthood Members for health care services authorized and provided under the Medicaid program—as it has for decades.  The Court should deny the motion.

## PROCEDURAL BACKGROUND

This Court granted Plaintiffs' motion for a preliminary injunction in its Orders dated July 21 and July 28, 2025.  Doc. Nos. 62, 69.  In both Orders, the Court denied the government's corresponding motion for a stay pending appeal.  Doc. No. 62 at 33-35; Doc. No. 69 at 56-57.  The government filed separate notices of appeal after each Order was entered.  Doc. Nos. 63, 75.

---

[1] Benner, *Most Planned Parenthood Clinics Are Ineligible for Medicaid Money After Court Ruling*, N.Y. Times (July 22, 2025), https://www.nytimes.com/2025/07/22/us/politics/trump-planned-parenthood.html (HHS spokesperson reacting to district court decision with "States should not be forced to fund organizations that have chosen *political advocacy* over patient care" (emphasis added)).

1

On August 7, 2025, after both appeals were docketed, and more than a week after the Court's second preliminary injunction ruling, the government filed the instant motion for a stay pending appeal in this Court.  Doc. No. 84.  On August 11, 2025, the government filed a parallel motion to stay pending appeal in the First Circuit, which became fully briefed on August 15, 2025.  *See Planned Parenthood Fed'n of Am. v. Kennedy*, Nos. 25-1698, 25-1755 (1st Cir.).  On August 19, 2025, the First Circuit denied the government's motion without prejudice in light of the motion pending before this Court.  Order, Nos. 25-1698, 25-1755, Dkt.00118329383 (1st Cir. Aug. 19, 2025).

## ARGUMENT

### I.    THE GOVERNMENT HAS NOT MET ITS BURDEN FOR RECONSIDERATION

The government acknowledges that it previously sought a stay pending appeal from this Court and that its request has been denied.  Doc. No. 85 at 2; Doc. Nos. 62, 69.  This Court correctly held that a stay should not issue here because: (1) "Defendants have not made a strong showing that they are likely to prevail on appeal"; (2) "enjoining enforcement of Section 71113 will risk minimal harm to Defendants"; (3) staying the preliminary injunction would "burden[] Plaintiffs and Planned Parenthood Members with an immediate choice between exercising their associational rights and maintaining eligibility for Medicaid reimbursements"; and (4) staying the preliminary injunction would harm the public interest by, *inter alia*, significantly impacting patient care.  Doc. No. 69 at 57.

The government now "respectfully renews" the same arguments that this Court found unpersuasive before.  Doc. No. 85 at 2.  If the government's latest motion is construed as another motion to stay, it should be denied for the same reasons.  *See infra* Part II.  But the Court has correctly identified the government's motion for what it is: a "request for reconsideration."  Doc. No. 87.  And because the government fails to identify any newly discovered evidence, does not

articulate an intervening change in the law, and cannot show that this Court's previous denials were based on manifest error or resulted in clear injustice, the motion should be denied.

A federal district court may reconsider its interlocutory orders under its inherent powers. *Fernández-Vargas v. Pfizer*, 522 F.3d 55, 61 n.2 (1st Cir. 2008). But reconsideration is "an extraordinary remedy which should be used sparingly." *Sullivan v. Dumont*, 391 F. Supp. 3d 161, 165 (D. Mass. 2019) (citation omitted). A motion for reconsideration "is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). Such motions are disfavored, and "appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009); *see also Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 518 (1st Cir. 2016) (a motion for reconsideration "must either establish a clear error of law or point to newly discovered evidence of sufficient consequence to make a difference"). It is the movant's burden to establish that reconsideration is appropriate. *Id.*

Here, the government has not carried its burden. The government's motion does not even purport to articulate any new evidence that would require reconsideration. That is unsurprising, as the risks of irreparable harm to Plaintiffs without an injunction remain dire. *See infra* Section II.B.

An "intervening change in controlling law" may also be grounds for reconsideration, but only where "the moving party … show[s] not only a change in the law but also that such change warrants modification of the judgment." *O'Brien v. Lowell Gen. Hosp.*, 749 F. Supp. 3d 209, 215 (D. Mass. 2024) (quotation marks and citation omitted). The government cites only two

opinions from the intervening period between its prior stay request and its present motion, both of which concern only the law related to stays of preliminary injunctions pending appeal—not the substantive law on the merits of this case.  *See Trump v. Boyle*, 2025 WL 2056889 (U.S. July 23, 2025); *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 2025 WL 2017106 (1st Cir. July 18, 2025).  Nowhere in its motion does the government claim that those opinions represent a sea change in the law—as is required to warrant modification of this Court's prior orders.  And the government overstates the law in any case.  Relying tangentially and incorrectly on *Boyle*, Doc. No. 85 at 15, the government invokes its interest in implementing a duly enacted statute, but it has "no interest in enforcing an unconstitutional law," *N.H. Indonesian Cmty. Support v. Trump*, 765 F. Supp. 3d 102, 112 (D.N.H. 2025) (citation omitted); *see also Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025).

Finally, the manifest error or clear injustice exception "requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong."  *Ellis v. United States*, 313 F.3d 636, 648 (1st Cir. 2002); *see also Trs. of Bos. Univ. v. Everlight Elecs. Co.*, 2020 WL 1429853, at *1 (D. Mass. Mar. 24, 2020).  Reconsideration should "not be granted based on new arguments or arguments previously presented but rejected."  *Coronavirus Rep. v. Apple, Inc.*, 560 F. Supp. 3d 642, 644 (D.N.H. 2021).  And "[m]ere disagreement with the reasoning or outcome of a prior order is not an adequate basis for reconsideration."  *Mazza v. City of Boston*, 2025 WL 1224112, at *2 (D. Mass. Apr. 28, 2025).  The entire thrust of the government's motion is mere disagreement with the Court's reasoning.  The government seeks to relitigate its likelihood of success by attacking this Court's clear and reasoned findings that Plaintiffs are likely to succeed on their bill of attainder, equal protection, and First Amendment claims.  Likewise, the government attempts to rehash its previously articulated positions as to

why the equities favor a stay.  The Court has seen these arguments before—and soundly rejected them in its two decisions granting preliminary injunctive relief.[2]

For example, the government attacks this Court's determination that the Defund Provision is likely an unconstitutional bill of attainder.  The government claims that "[t]his Court … failed to distinguish" the Supreme Court's holding in *Communist Party of U.S. v. Subversive Activities Control Board*, 367 U.S. 1 (1961), and "erroneously seized on the fact that the universe of entities subject to [the] prospective requirement" regarding the provision of abortion "is determined in part by reference to a retrospective characteristic—namely, whether an entity received $800,000 in Medicaid reimbursements in 2023."  Doc. No. 85 at 7 (quotation marks omitted).  But this Court clearly did consider and address *Communist Party*.  Doc. No. 69 at 34-35 (quoting *Communist Party*, 367 U.S. at 87-88).  The government instead means that this Court, *in the government's eyes*, failed to *sufficiently* distinguish *Communist Party*.  The government's subjective conviction, no matter how strong, that this Court should have done more to distinguish *Communist Party* in its Orders does not constitute manifest error and therefore does not justify reconsideration.

Later in its motion, the government claims that this Court's approach to Plaintiffs' First Amendment claims "misapplies Supreme Court precedent and misunderstands [the Defund Provision] itself" because "[m]ere statutory reference to an entity's affiliates does not amount to an intrusion on the First Amendment's protection of expressive association."  Doc. No. 85 at 11.  But as the Court correctly held, "Members' affiliation via their membership in Planned Parenthood Federation is expressive," Doc. No. 69 at 26, and "[a]t bottom, Section 71113

---

[2] To the extent the government asserts any new arguments not raised in its prior briefings, they are waived.  *Disaster Sols., LLC v. City of Santa Isabel*, 21 F.4th 1, 7-8 (1st Cir. 2021) (arguments not raised prior to motion to reconsideration waived in both trial and appellate courts).

requires each Member to disaffiliate with Planned Parenthood Federation and stop providing abortion to continue participating in Medicaid programs," *id.* at 39. The Court did not misunderstand the Defund Provision; it relied on what the government itself represented in its briefs. Doc. No. 53 at 11 (Members may only escape coverage "by ceasing to provide for abortions *and disaffiliating with entities that do*" (emphasis added)). And the Court properly applied Supreme Court precedent in concluding that such a requirement "prohibits the type of dual structure that would have insulated the abortion restriction from an unconstitutional conditions challenge." Doc. No. 69 at 28-29 (discussing *Regan v. Tax'n With Representation of Wash.*, 461 U.S. 540 (1983); *FCC v. League of Women Voters of Cal.*, 468 U.S. 364 (1984)).

The government has made it abundantly clear that it disagrees with this Court's prior conclusions, but mere disagreement is insufficient to necessitate reconsideration. *See Mazza*, 2025 WL 1224112, at *2. This Court has already concluded that the government is not entitled to a stay. The government has failed to articulate any misapprehension by the Court, or any change in material fact or point of law, that would justify reconsideration. Because the government cannot make the requisite—or any—showing that reconsideration is warranted, its motion should be denied.

## II.    THE GOVERNMENT IS NOT ENTITLED TO A STAY OF THE COURT'S PRELIMINARY INJUNCTIONS PENDING APPEAL

Even if the Court were to consider the government's arguments on the merits rather than under the reconsideration standard, the motion should be rejected for the same reasons this Court has articulated in its prior decisions. As this Court has recognized, the government has failed to show a likelihood of success on the merits or that it will be irreparably injured absent a stay.

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). A stay pending appeal is an "intrusion

into the ordinary processes of administration and judicial review." *New York v. Trump*, 133 F.4th 51, 65 (1st Cir. 2025) (quoting *Nken*, 556 U.S. at 427). "[T]he party seeking a stay—here, the Government—bears the burden of proving that the circumstances justify one." *New Jersey v. Trump*, 131 F.4th 27, 34 (1st Cir. 2025). In determining whether the government has carried its burden, the Court must consider (1) whether the government has made a strong showing that it is likely to succeed on the merits; (2) whether it will be irreparably injured absent a stay; (3) whether issuing the stay will substantially injure the other parties interested in proceedings; and (4) where the public interest lies. *Nken*, 556 U.S. at 426. The first two factors are the most critical. *Id.* at 434. In the First Circuit, likelihood of success serves as the "sine qua non" of the analysis. *Acevado-García v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002). Here, no factor favors a stay.

## A.    Plaintiffs Have Established A Likelihood of Success On The Merits

For all the reasons articulated in this Court's prior decisions, the Defund Provision is unconstitutional. Doc Nos. 62, 69. The Court's prior reasoning applies with equal force in resolving the present motion.

*First*, as the Court held in its July 21 Opinion, the Defund Provision, if applied to Planned Parenthood Members that do not independently meet the definition of "prohibited entit[ies]" under the statute (the "Non-Qualifying Members"), would likely violate those Members' First Amendment associational rights. Doc. No. 62 at 16-23. The unconstitutional conditions doctrine bars the government from "leverag[ing] funding to regulate speech outside the contours of the [funded] program itself," while permitting the government to "specify the activities Congress wants to subsidize." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l*, 570 U.S. 205, 214-215 (2013). As this Court persuasively explained: "[W]here Section 71113 disqualifies Planned Parenthood Members who do not provide abortion because of their

affiliation with other Members who will continue to provide abortion, and where membership in Planned Parenthood Federation is expressive, Plaintiffs are likely to succeed in establishing that Section 71113 unconstitutionally conditions Medicaid funding on these Members [forgoing] their First Amendment right of association."  Doc. No. 62 at 23.

In response, the government says only that the Defund Provision was simply a permissible "funding decision[]" that did not seek to regulate speech outside the Medicaid program.  Doc. No. 85 at 14.  Contrary to the government's telling, the Defund Provision is not simply a matter of prohibiting entities from shuffling funds between corporate sub-entities.  *Id.* at 10.  Instead, the Defund Provision is laser-focused on punishing Planned Parenthood.  And even if the government were right (it is not), "[i]nnocent motives do not eliminate the danger" of a law (like the Defund Provision) that directly restrains First Amendment freedoms.  *Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015); *see also NAACP v. Alabama*, 357 U.S. 449, 461-462 (1958).

*Second*, in its July 28 Opinion, the Court addressed Plaintiffs' arguments which remained under advisement.  It held, with respect to all Planned Parenthood Members, that the Defund Provision is likely an unconstitutional bill of attainder in violation of U.S. Const. art. I, § 9, cl. 3. Doc. No. 69 at 30-41.  The Court determined that the Defund Provision likely satisfies all three elements of a bill of attainder: "[1] specification of the affected persons, [2] punishment, and [3] lack of a judicial trial."  *Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.*, 468 U.S. 841, 847 (1984).  As the Court explained, the Defund Provision specifies Planned Parenthood and its Members because they "were the 'easily ascertainable' target of the law when the legislation was passed," Doc. No. 69 at 32, and "[t]he past conduct defining the affected … group … consists of 'irrevocable acts,'" *id.* at 35 (quoting *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 669 (9th Cir. 2002)).  The Court also determined that the Defund Provision likely punishes

Planned Parenthood for being the Nation's leading advocate for sexual and reproductive rights, because the Defund Provision's bar on Medicaid participation "is consistent with historical notions of punishment," and "there is a poor fit between Section 71113 and any non-punitive legislative purpose," as corroborated by legislative context.  Doc. No. 69 at 37-38, 40-41.

None of the government's arguments to the contrary has merit.  As to the specification requirement, it is immaterial that the law incidentally captures two entities other than Planned Parenthood Members.  The government has not disputed that these entities were afterthoughts swept into the bill during the reconciliation process.  Doc. No. 5 at 10, 20 n.15.  Nor does it matter that the specified class may escape punishment by ceasing to provide abortions or affiliate with entities that do.  Leaving "the designated parties a way of escaping the penalty" does not excuse a bill of attainder.  *United States v. Brown*, 381 U.S. 437, 442 (1965).  And as to the punishment requirement, the Defund Provision prevents Planned Parenthood Members from continuing to serve Medicaid patients, the consequence of which is "to put plaintiff[s] out of business, or at least … out of the business in which [they have] been engaged to date."  *Fla. Youth Conservation Corps v. Stutler*, 2006 WL 1835967, at *1 (N.D. Fla. June 30, 2006). Exclusion is therefore "analogous to legislation that prohibits a person or entity from engaging in certain employment, which courts have historically found to be associated with punishment." *Planned Parenthood of Cent. N.C. v. Cansler*, 877 F. Supp. 2d 310, 324 (M.D.N.C. 2012).  And the government's only offered rationale for the Defund Provision—that it "will discourage at least some ... abortions," Doc. No. 85 at 5-6—does not hold water.  The Defund Provision does not prevent taxpayer dollars from paying for abortions, nor does it prevent the majority of abortion providers from receiving Medicaid funding.  The Hyde Amendment, moreover, has long prohibited federal Medicaid money from funding most abortions.  The Defund Provision

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO STAY PRELIMINARY INJUNCTIONS

thus has nothing to do with funding for abortion, and instead, as the government has since admitted, is actually about attempting to punish Planned Parenthood for its political advocacy. *See supra* n.1.

*Third*, the Court held in its July 28 Opinion that the Defund Provision violates the Fifth Amendment equal protection rights of Planned Parenthood and its Members.  Doc. No. 69 at 41-49.  As the Court recognized, by design, the Defund Provision prohibits Planned Parenthood Members from receiving Medicaid reimbursements while leaving untouched almost all others who provide the same care—even abortions—in violation of the Fifth Amendment's equal protection guarantee.  Equal protection requires "that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); Doc. No. 69 at 44-45.  The Court correctly concluded that this selective disfavoring fails heightened scrutiny, which applies here because the Defund Provision infringes Planned Parenthood's fundamental First Amendment right of association.  Doc. No. 69 at 45-46; *see also Rocket Learning, Inc. v. Rivera-Sánchez*, 715 F.3d 1, 9 n.6 (1st Cir. 2013) (quoting *Plyler v. Doe*, 457 U.S. 202, 217 (1982)); *Eisenstadt v. Baird*, 405 U.S. 438, 447 n.7 (1972).  And the Court was further correct in determining that the Defund Provision would fail any level of review.  Doc. No. 69 at 47 ("Plaintiffs are likely to show that there is no rational relationship between the class burdened by Section 71113 … and the goal of reducing abortion.").

Again, the government's responses do nothing to change this conclusion.  The government is wrong that the Defund Provision "has nothing to do with First Amendment association."  Doc. No. 85 at 10.  As this Court recognized, because the Defund Provision "applies to affiliates of an entity that provide[s] abortion, no Member can escape the law's burden simply by ending its own abortion services.  Instead, a member must also disaffiliate

from any Member that continues to provide abortion, which requires disassociating from Planned Parenthood Federation." Doc. No. 69 at 45. That compulsion curtails Members' associational expression, as "[m]embership in Planned Parenthood Federation—and corresponding affiliation with other Members—is ... part and parcel with Planned Parenthood Members' associational expression." *Id.* at 27. And again, the government has itself recently described the Defund Provision as an attempt to punish "organizations that have chosen political advocacy over patient care," *supra* n.1, underscoring that the provision targets Planned Parenthood because of its First Amendment-protected activity. The government has not offered anything new that would cast doubt on this Court's prior conclusions. Because Plaintiffs are likely to succeed on the merits of their bill of attainder, equal protection, and First Amendment claims, this factor weighs against granting a stay of the Court's preliminary injunctions pending appeal.

**B.    The Remaining Factors Weigh Heavily Against A Stay**

The government emphasizes that Acts of Congress are entitled to a presumption of constitutionality, and that enjoining their enforcement injures the people Congress represents. Doc. No. 85 at 15. But the government's bare assertion that "this Court erred in downplaying these harms," *id.*, ignores this Court's reasoned conclusion that the "significant public interest in the implementation of duly enacted statutes" must give way "when social policy burdens the exercise of First Amendment rights," Doc. No. 69 at 53-54. Moreover, as the Court recognized, "in general, there is no public interest in the perpetuation of unlawful government action." *Id.* at 54 (citing *Somerville*, 139 F.4th at 76); *accord Legend Night Club v. Miller*, 637 F.3d 291, 302-303 (4th Cir. 2011) (the government "is in no way harmed" when "unconstitutional restrictions" are enjoined); *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) ("[T]here can be no irreparable harm … when [the government] is prevented from enforcing an unconstitutional statute[.]"); *Homans v. City of Albuquerque*, 264 F.3d 1240, 1244 (10th Cir.

11

2001) ("[W]e believe that the public interest is better served by … protecting the core First Amendment right of political expression."); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (citation omitted)).

Nor has the government carried its burden of showing it will be irreparably injured for other reasons absent a stay, because as the Court already concluded, "enjoining enforcement of Section 71113 will risk minimal harm to [the government]." Doc. No. 69 at 57. The Defund Provision "does not increase or decrease funding for Medicaid programs," and halting its enforcement "does not require the government to expend funds for services other than those the government has approved." *Id.* at 53.

By stark contrast, "staying the preliminary injunction burdens Plaintiffs and Planned Parenthood Members with an immediate choice between exercising their associational rights and maintaining eligibility for Medicaid reimbursements." Doc. No. 69 at 57. Beyond the irreparable constitutional injuries that Plaintiffs would suffer without an injunction, this Court also determined that Plaintiffs face disruption to patient care, which, in turn, "risks irreparable harm to Planned Parenthood Federation and its Members." *Id.* at 52. As the Court correctly noted, "[w]here Section 7113 has and will continue to force Member health centers to cancel appointments for Medicaid patients and reduce hours and staffing, it interferes with Planned Parenthood Federation and its Members' mission." *Id.* Thus, "injunctive relief is necessary to prevent Planned Parenthood Federation and its Members from suffering irreparable injury," *id.*, and "the public interest does not favor staying relief," *id.* at 57.

## CONCLUSION

For the foregoing reasons, the government's motion to stay the Court's preliminary injunctions pending appeal should be denied.

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO STAY PRELIMINARY INJUNCTIONS

Dated:  August 21, 2025

Respectfully submitted,

/s/ Alan Schoenfeld

Emily Nestler*
PLANNED PARENTHOOD
  FEDERATION OF AMERICA, INC.
1110 Vermont Avenue, NW
Washington, D.C.  20005
Tel.: (202) 973-4800
emily.nestler@ppfa.org

Jennifer Sandman*
C. Peyton Humphreville*
Kyla Eastling*
PLANNED PARENTHOOD
  FEDERATION OF AMERICA, INC.
123 William Street
New York, NY 10038
Tel.: (212) 441-4363
jennifer.sandman@ppfa.org
peyton.humphreville@ppfa.org
kyla.eastling@ppfa.org

Alan Schoenfeld*
Cassandra A. Mitchell*
Alex W. Miller*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com
cassie.mitchell@wilmerhale.com
alex.miller@wilmerhale.com

Sharon K. Hogue, BBO# 705510
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
sharon.hogue@wilmerhale.com

Albinas J. Prizgintas*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

*Pro hac vice application granted.

Counsel for Plaintiffs

13

## <u>CERTIFICATE OF SERVICE</u>

Counsel for Plaintiffs certify that they have submitted the foregoing document with the clerk of court for the District of Massachusetts, using the electronic case filing system of the Court. Counsel for Plaintiffs hereby certify that they have served all parties electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

Dated:  August 21, 2025

*/s/ Alan Schoenfeld*
Alan Schoenfeld