UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD LEAGUE OF MASSACHUSETTS, and PLANNED PARENTHOOD ASSOCIATION OF UTAH, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the U.S. Department of Health and Human Services, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare & Medicaid Services, and CENTERS FOR MEDICARE & MEDICAID SERVICES, <br><br> Defendants. | Civil Action No. 1:25-cv-11913-IT |

MEMORANDUM & ORDER

August 29, 2025

TALWANI, D.J.

Pending before the court is Defendants' Motion to Stay Preliminary Injunctions Pending Appeal [Doc. No. 84]. Plaintiffs Planned Parenthood Federation of America, Inc. ("Planned Parenthood Federation"), Planned Parenthood League of Massachusetts ("Planned Parenthood Massachusetts"), and Planned Parenthood Association of Utah ("Planned Parenthood Utah") assert that Defendants have not carried their burden to show that a stay is warranted. See generally Opp'n [Doc. No. 92]. For the reasons set forth below, Defendants' Motion [Doc. No. 84] is DENIED.

## I.    Background

The court incorporates by reference the factual findings set forth in its <u>Memorandum &</u> <u>Order</u> [Doc. No. 69].

To summarize, on July 4, 2025, the President signed into law An Act to provide for reconciliation pursuant to title II of H. Con. Res. 14 ("the 2025 Reconciliation Act"), Pub. L. No. 119-21, 139 Stat. 72 (2025). Mem. & Order 23 [Doc. No. 69]. Section 71113(a) of the 2025 Reconciliation Act directs that certain "prohibited entities" may not receive federal Medicaid reimbursements for a one-year period beginning on the law's effective date. Pub. L. No. 119-21, § 71113(a), 139 Stat. 72, 300 (July 4, 2025). Section 71113(b)(1) defines a "prohibited entity" as:

> an entity, including its affiliates, subsidiaries, successors, and clinics—
>
> (A) that, as of the first day of the first quarter beginning after the date of enactment of this Act—
>
> > (i) is an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code;
> >
> > (ii) is an essential community provider described in section 156.235 of title 45, Code of Federal Regulations (as in effect on the date of enactment of this Act), that is primarily engaged in family planning services, reproductive health, and related medical care; and
> >
> > (iii) provides for abortions, other than an abortion-
> >
> > > (I) if the pregnancy is the result of an act of rape or incest; or
> > >
> > > (II) in the case where a woman suffers from a physical disorder, physical injury, or physical illness, including a life-endangering physical condition caused by or arising from the pregnancy itself, that would, as certified by a physician, place the woman in danger of death unless an abortion is performed; and
>
> (B) for which the total amount of Federal and State expenditures under the Medicaid program under title XIX of the Social Security Act for medical assistance furnished in fiscal year 2023 made directly, or by a covered  organization, to the entity or to any affiliates, subsidiaries, successors, or clinics of the entity, or made to the entity or to any affiliates, subsidiaries, successors, or clinics of the entity as part of a nationwide health care provider network, exceeded $800,000.

Id. § 71113(b)(1). The definition of "prohibited entity" captures all Planned Parenthood Federation Members, including some that do not perform abortion and/or did not receive more than $800,000 in Medicaid reimbursements during fiscal year 2023. Mem. & Order 13–14 [Doc. No. 69]; Custer Decl. ¶ 47 [Doc. No. 5-1]; Lee Decl. ¶ 29 [Doc. No. 5-2]. The definition also covers two entities that are not Planned Parenthood Federation Members. See Mem. & Order 14; Snyder Decl. ¶ 6 [Doc. No. 53-2].

Plaintiffs filed this action on July 7, 2025, alleging that Section 71113 violates the United States Constitution by subjecting Planned Parenthood Federation and its Members to a bill of attainder, by retaliating against them in violation of the First Amendment, and by denying them equal protection of the law. See Compl. ¶¶ 130–53 [Doc. No. 1]. Plaintiffs also alleged that where Planned Parenthood Members that do not perform abortion and/or did not receive more than $800,000 in Medicaid reimbursements during fiscal year 2023 would be covered based on their affiliation with other Members, Section 71113 imposes an unconstitutional condition on their First Amendment rights and is unconstitutionally vague in violation of the Fifth Amendment. Id. ¶¶ 164–75.

Plaintiffs also filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. No. 4]. In opposing Plaintiffs' Motion [Doc. No. 4], Defendants requested that the court stay any injunctive relief pending appeal. Defs.' Mem. 44 [Doc. No. 53]. On July 21, 2025, the court granted Plaintiffs' request for a Preliminary Injunction in part and enjoined Defendants from enforcing or otherwise applying Section 71113 against Planned Parenthood Federation Members, including Planned Parenthood Utah, who will not provide abortion services as of October 1, 2025, or for whom the total amount of Federal and State expenditures under the Medicaid program furnished in fiscal year 2023 made directly to them did

3

not exceed $800,000. Mem. & Order 35 [Doc. No. 62]. The court denied Defendants' request to stay this injunction pending appeal. Id. 33–35. Defendants appealed this ruling the following day, Notice of Appeal [Doc. No. 63], but did not seek a stay from the First Circuit at that time.

On July 28, the court granted the remainder of Plaintiffs' request for injunctive relief. The court enjoined Defendants from enforcing or applying Section 71113 against Planned Parenthood Utah, Planned Parenthood Massachusetts, and all other Planned Parenthood Federation Members. Mem. & Order 58 [Doc. No. 69]. The court again denied Defendants' request for a stay pending appeal, finding that Defendants did not carry their burden to show that a stay was warranted. Id. at 57. Defendants appealed that ruling on August 5, 2025. Notice of Appeal [Doc. No. 75]. Again, Defendants did not seek a stay from the First Circuit at that time.

On August 7, 2025, Defendants filed the pending standalone Motion to Stay Preliminary Injunctions Pending Appeal [Doc. No. 84], which requested a stay of the court's July 21, 2025 Memorandum & Order [Doc. No. 62] and July 28, 2025 Memorandum & Order [Doc. No. 69] pending appeal to the United States Court of Appeals for the First Circuit. Mot. 1 [Doc. No. 84]. On August 11, 2025, the court ordered Plaintiffs to respond to Defendants' Motion [Doc. No. 84] no later than August 21, 2025, in accordance with Local Rule 7.1(b)(2). See Elec. Order [Doc. No. 87].

That evening, Defendants sought a stay in the First Circuit. See Appellants' Mot. for Stay Pending Appeal, Planned Parenthood Federation of America, Inc., v. Robert F. Kennedy, Jr., No. 25-1698 (1st Cir., Aug. 11, 2025). Defendants did not withdraw the Motion [Doc. No. 84] pending before this court, however, and on August 19, 2025, the First Circuit denied Defendants' stay request without prejudice. See Order 1 [Doc. No. 89].

On Thursday, August 20, 2025, Defendants notified the court that they would not seek leave to file a Reply in support of the pending Motion [Doc. No. 84]. Defs.' Notice Regarding Stay Mot. [Doc. No. 91]. Defendants requested that the court rule on their motion no later than Monday, August 25, 2025, "so that, if needed, Defendants may seek relief from the First Circuit and, if further relief is necessary, from the Supreme Court in advance of October 1, 2025[.]" Id. at 3. Although Defendants initiated appellate proceedings on July 22, 2025, see Notice of Appeal [Doc. No. 63], and now seek a stay, to date they have not sought expedited review from the First Circuit of the preliminary injunction orders.

## II.    Standard of Review

A district court may stay injunctive relief while an appeal is pending. Fed. R. Civ. P. 62(d). However, "[a] stay is an intrusion into the ordinary processes of administration and judicial review." Nken v. Holder, 556 U.S. 418, 427 (2009) (internal quotations and citation omitted); accord New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025). Accordingly, "[a] stay is not a matter of right, even if irreparable injury might otherwise result." Nken, 556 U.S. at 433 (citation omitted).

"[T]he party seeking a stay—here, the Government—bears the burden of proving that the circumstances justify one." New Jersey v. Trump, 131 F.4th 27, 34 (1st Cir. 2025). In determining whether the circumstances warrant a stay, courts consider

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Nken, 556 U.S. at 426.

"The first two factors . . . are the most critical. It is not enough that the [applicant's] chance of success on the merits be better than negligible." Id. at 434 (internal quotations and

citation omitted). Similarly, "simply showing some possibility of irreparable injury fails to satisfy the second factor." Id. at 434–35 (internal quotations and citation omitted). Courts assess the harm to other interested parties and weigh the public interest "[o]nce an applicant satisfies the first two factors." Id. at 435.

### III.    Discussion

#### A.    *Defendants' Likelihood of Success on the Merits*

In the orders on appeal, the court concluded that Plaintiffs demonstrated a substantial likelihood of success on their claims that Section 71113 unconstitutionally conditions Medicaid funding on Planned Parenthood Members foregoing associational rights, violates Planned Parenthood Members' right to equal protection, and subjects Planned Parenthood Federation and its Members to a bill of attainder. Mem. & Order 23–49 [Doc. No. 69]; see also Mem. & Order 16–28 [Doc. No. 62] (concluding Section 71113 unconstitutionally conditions Medicaid funding on Planned Parenthood Members foregoing associational rights and violates Planned Parenthood Members' right to equal protection). Defendants argue that they are likely to succeed on the merits on appeal, focusing primarily on their contention that Section 71113 is not a bill of attainder. See Mem. ISO Mot. to Stay 3–9 [Doc. No. 85]. As explained below, Defendants have not "made a strong showing" that their challenges are likely to prevail on appeal as to any of the grounds on which Plaintiffs have thus far shown a likelihood of success, let alone all three.

##### 1.    The First Amendment and Equal Protection Claims

###### a.    The Court's Original Findings

Defendants argue that Section 71113's "reference to an entity's 'affiliates' . . . in defining a 'prohibited entity' does not transform the entire provision into an intrusion on the First Amendment's protection of expressive association." Mem. ISO Mot. to Stay 9 [Doc. No. 85]. In their construct, "Section 71113 does not require Medicaid recipients (i.e. providers) to refrain

6

from any form of expressive activity." Mem. ISO Mot. to Stay 12 [Doc. No. 85]. But Defendants ignore that Section 71113 does exactly that where it requires Members to disassociate from each other to continue receiving Medicaid reimbursement. See Mem. & Order 26, 28, 45 [Doc. No. 69].

As the court explained, "[m]embership in Planned Parenthood Federation—and corresponding affiliation with other Members—is . . . part and parcel with Planned Parenthood Members' associational expression." Mem. & Order 27 [Doc. No. 69]. Defendants have asserted that "HHS and CMS could permissibly conclude . . . that [Planned Parenthood Federation] members are all 'affiliates' within the meaning of the statute." Defs.' Mem. 29 [Doc. No. 53]. Consequently, Planned Parenthood Members who do not perform abortions must relinquish their affiliation with other Planned Parenthood Members, and thus with Planned Parenthood Federation, to avoid Section 71113's coverage. Where the law discourages membership in Planned Parenthood Federation, it diminishes Members' associational expression. See NAACP v. Claiborne Hardware Co., 458 U.S. 886, 908 (1982) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association.") (quoting NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460 (1958)). And expressive association itself is protected by the First Amendment. Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984) (explaining Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."). Where Section 71113 discourages Planned Parenthood Members from "affiliating" with each other via Membership in Planned Parenthood Federation, it is irrelevant that Section 71113 does not prevent Members from "collaborat[ing] for the purpose of advocacy,

7

prais[ing] or endors[ing] each other publicly, participat[ing] in events, or issu[ing] joint press releases." Mem. ISO Mot. to Stay 12 [Doc. No. 85].

Defendants suggest that Section 71113 at most creates a First Amendment concern only regarding its application "to a handful of unusual Planned Parenthood members." Mem. ISO Mot. to Stay 13 [Doc. No. 85]. But the court has explained that Section 71113 also impinges Planned Parenthood Federation's associational right. See Mem. & Order 37, 45, 52 [Doc. No. 69]. As Defendants have pointed out, "[a]ny [Planned Parenthood Federation] member can . . . remove itself from the provision's scope by . . . ceasing to provide for abortions and disaffiliating with entities that do." Defs.' Mem. 11 [Doc. No. 53]; see also Mem. & Order 34, 39, 45 [Doc. No. 69] (discussing disaffiliation requirement). But because disaffiliating from other Members requires disassociating from Planned Parenthood Federation, Section 71113's application on the basis of affiliation inhibits Planned Parenthood Federation's ability to engage in collective advocacy. The law thus "impinges on Planned Parenthood Federation's . . . right of association." Mem. & Order 45 [Doc. No. 69]; see also Mem. & Order 30 [Doc. No. 62] ("[W]here Section 71113 burdens Non-qualifying Members' affiliation with other Planned Parenthood Members, it diminishes Planned Parenthood Federation's and those Members' associational expression and causes First Amendment injury.").

Because Section 71113 burdens Planned Parenthood Federation and its Members' associational expression, the court concluded that Section 71113 is subject to strict scrutiny. Mem. & Order 45 [Doc. No. 69]. Laws that impinge on fundamental rights, including First Amendment rights, "will only be upheld if 'precisely tailored to serve a compelling governmental interest.'" Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 9 n.6 (1st Cir. 2013) (quoting Plyler v. Doe, 457 U.S. 202, 217(1982)); Mem. & Order 45–47 [Doc. No. 69].

Although Defendants contest the court's alternative conclusion that Section 71113 is unlikely to survive rational basis review, see Mem. ISO Mot. to Stay 14 [Doc. No. 85], they do not contend that "halting funding to certain large abortion providers" constitutes a compelling government interest, see Mem. ISO Mot. to Stay 16 [Doc. No. 85], or that Section 71113 is "precisely tailored" to any compelling interest such that it can survive strict scrutiny.

The court concluded that Plaintiffs are also likely to succeed in establishing that Section 71113 fails rational basis review because Section 71113's conjunctive criteria "affect[] only a small number of abortion providers," "leave[] every other conceivable category [of abortion provider] unaffected," and include Planned Parenthood Members who do not provide abortion. Mem. & Order 47–49 [Doc. No. 69]. Defendants continue to argue that the law's criteria are rational in isolation, suggesting that because essential community providers—which primarily serve low-income, medically underserved individuals—are most likely to have many Medicaid patients, depriving Medicaid funding from only this category of healthcare providers "justif[ies] the administrative burdens associated with identifying prohibited entities." Mem ISO Mot. to Stay 15 [Doc. No. 85]. But it is the criteria in conjunction that single out Planned Parenthood Federation Members (and only two other known entities) for unequal treatment. Mem. & Order 44–45 [Doc. No. 69]. Therefore, Section 71113's conjunctive definition undermines the conceived rational bases for the law notwithstanding justifications for any of the individual criterion. See Mem. & Order 47–49 [Doc. No. 69].

Defendants assert that "halting federal subsidies to one category of abortion providers plainly serves" the goal of reducing abortion. See Mem. ISO Mot. to Stay 14 [Doc. No. 85]. "But discriminatory exclusion . . . is [not] a permissible legislative end." Mem. & Order 48 [Doc. No. 69] (citing Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.,

UAW, 485 U.S. 360, 373 (1988) and Romer v. Evans, 517 U.S. 620, 632 (1996)). And as the court detailed, Section 71113 excludes a category of Medicaid programs that is both over and underinclusive such that it likely violates Plaintiffs and Planned Parenthood Members' constitutional right to equal protection under both strict scrutiny and rational basis review. See id. at 44–49.

   b. Defendants' New Arguments

  Defendants' Memorandum in Support of Motion to Stay [Doc. No. 85] also seeks to justify the law's coverage of "affiliates" as no more than "an incidental burden" on protected expression. Mem. ISO Mot. to Stay 11 [Doc. No. 85] (citing United States v. O'Brien, 391 U.S. 367, 377 (1968) and Arcara v. Cloud Books, Inc., 478 U.S. 697, 705 (1986)). However, Defendants previously asserted only that "the law does not restrict speech or burden association." Defs.' Mem. 34 [Doc. No. 53]; see also id. at 7 ("providing abortions is conduct, not speech); id. at 35 ("Section 71113 . . . does not condition government funding on speech at all."). To the extent Defendants seek to justify the law's burden on protected expression for the first time through their Motion to Stay [Doc. No. 84], their argument is not properly before the court. See Iverson v. City Of Bos., 452 F.3d 94, 103 (1st Cir. 2006) (concluding plaintiff waived argument not presented in opposition to defendant's dispositive motion); cf. Disaster Sols., LLC v. City of Santa Isabel, Puerto Rico, 21 F.4th 1 (1st Cir. 2021) (holding argument waived where not presented prior to post-judgment motion).

  The court nonetheless addresses Defendants' new argument in light of the important First Amendment issues at stake. In the cases on which Defendants rely, the Court "has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." O'Brien, 391 U.S. at 376. Instead of regulating one

course of conduct, Section 71113 requires Planned Parenthood Members to refrain from specific activities—including affiliating with Planned Parenthood Federation and Members that provide abortion—to continue engaging in a separate activity—participating in Medicaid programs. Defendants have not articulated why their argument under the O'Brien test will prevail where Plaintiffs' First Amendment claim turns on application of the unconstitutional conditions framework. See Mem. & Order 23–30 [Doc. No. 69].

As the court explained, the Supreme Court has emphasized in unconstitutional conditions cases that permitting regulated entities to use distinct (albeit closely-related) corporate entities to separate federally funded activities from protected expression that Congress chooses not to fund "allows Congress to set conditions with its spending powers without unconstitutionally leveraging the funding." Mem. & Order 28 [Doc. No. 69] (discussing Regan v. Taxation With Representation of Wash., 461 U.S. 540 (1983) and FCC v. League of Women Voters of Cal., 468 U.S. 364 (1984)). But the "affiliates" provision does the opposite; it leverages funding to coerce disaffiliation among Members and from Planned Parenthood Federation.

Defendants acknowledge that in the cases on which the court relied, "the Supreme Court recognized that the resulting First Amendment concerns would be alleviated if the government permitted the regulated entities" to engage in protected expression "through their affiliates." Mem. ISO Mot. to Stay 10 [Doc. No. 85] (citing Regan, 461 U.S. at 543, and FCC, 468 U.S. at 400-01). Defendants argue "[t]hat principle has no bearing here, where Section 71113 does not require Medicaid recipients (i.e. providers) to refrain from any expressive activity." Id. But Section 71113 does exactly that: The law requires Planned Parenthood Members to refrain from affiliating with Members that provide abortions, and that affiliation is for expressive activity. See Mem. & Order 26–27 [Doc. No. 69] (explaining "the record demonstrates that Members'

affiliation via their membership in Planned Parenthood Federation is expressive"). And as this court previously explained, "Section 71113 prohibits the type of dual structure that would have insulated the abortion restriction from an unconstitutional conditions challenge." Mem. & Order 29 [Doc. No. 69].

Even assuming that O'Brien applies, Defendants have not made the requisite showing that the burden on First Amendment rights is permissible here. A government regulation is sufficiently justified if, inter alia, "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." O'Brien, 391 U.S. at 377 (footnotes omitted) (emphasis added). Defendants make no such showing.

Defendants argue only that the "affiliates" provision is necessary because without it, "a prohibited entity could create subsidiaries or affiliates and then use them to obtain federal Medicaid funds, frustrating Congress' objective of withholding taxpayer dollars from certain large abortion providers." Mem. ISO Mot. to Stay 10 [Doc. No. 85]. But while Defendants focus on evasion of the law through new "subsidiaries" or other entities under a prohibited entity's control, the provision has no such limitation. Instead, it encompasses existing affiliates that do not provide abortion. And there is no indication in the record that Planned Parenthood Members share revenues from Medicaid reimbursements. The result is a restriction on associational freedom that is in no way "essential to the furtherance of [Defendants'] interest" in withholding funds from certain abortion providers, Arcara, 478 U.S. at 703 (quoting O'Brien, 391 U.S. at 377 (footnotes omitted)), and instead imposes a wholly unwarranted burden.

Further, Section 71113 differs in significant respects from the list of statutory provisions Defendants offer to suggest that the term "affiliates" raises no First Amendment concern. See Mem. ISO Mot. to Stay 10–11 [Doc. No. 85]. First, the statutes Defendants identify illustrate that

where Congress seeks to prevent evasion of regulation through related entities, it has done so by

carefully defining the relationships at issue to ensure that the statute only applies to organizations

related to the regulated entities via "control."[1] In contrast here, Section 71113 does not define or

limit the term "affiliates." And while Defendants contend that the term "affiliates" necessarily

has the same meaning in Section 71113 as it does in those statutes, Section 71113 does not

contain the same limitation. Consistent with the absence of any express limit on the term

"affiliates," Defendants have argued that "Planned Parenthood Federations' 'membership

---

[1] See e.g. 12 U.S.C. § 1841(k) ("For purposes of this chapter [relating to banking regulation], the term 'affiliate' means any company that controls, is controlled by, or is under common control with another company."); 21 U.S.C. § 350g(l)(4)(A) (defining, for purposes of section regarding monitoring and recordkeeping at facilities engaged in food manufacturing and processing, "[t]he term 'affiliate'" as "any facility that controls, is controlled by, or is under common control with another facility"); 26 U.S.C. § 414(b) (treating, for purposes of certain sections of the Internal Revenue Code, "all employees of all corporations which are members of a controlled group of corporations (within the meaning of section 1563(a) . . . as employed by a single employer")) and id. § 1563(a) (defining a "controlled group of corporations" based on stock ownership); 29 U.S.C. § 1301(14) (defining, for purposes of determining the employer for certain plans under ERISA, a "controlled group" to mean a group "under common control" of a person); 15 U.S.C. § 1693o-2(c)(1) (defining, for the purpose of exemption from regulations on interchange fees for electronic debit transactions, "[t]he term 'affiliate'" as "any company that controls, is controlled by, or is under common control with another company"); 7 U.S.C. § 136a-1(i)(E)(ii)(II)(bb) (explaining, for purposes of setting fees for registrants of pesticides, "persons are affiliates of each other if, directly or indirectly, either person controls or has the power to control the other person, or a third person controls or has the power to control both persons"); 16 U.S.C. § 620e(5) (defining, for purposes of statute restricting exports of unprocessed timber from federal lands, "person" subject to restrictions to include "business affiliates where 1 affiliate controls or has the power to control the other or when both are controlled directly or indirectly by a third person"); 42 U.S.C. § 16451(1) (defining, for purposes of statute concerning records costs incurred by a public utility or natural gas company, "[t]he term 'affiliate' of a company" as "any company, 5 percent or more of the outstanding voting securities of which are owned, controlled, or held with power to vote, directly or indirectly, by such company"); cf. 50 U.S.C. § 4611 (explaining, where the President has found a violation of multilateral export control violations by a foreign person, sanctions may be imposed on "any parent, affiliate, subsidiary, and successor entity of the foreign person," except where the President determines that "the parent, affiliate, subsidiary, or successor entity . . . has not knowingly violated the export control regulation violated by the foreign person" and other requirements are met).

standards,' 'accreditation standards,' and 'shared medical standards and guidelines,' would be sufficient to show common control such that Planned Parenthood Members who do not provide abortion could be 'affiliates' of the Planned Parenthood Members who do," Mem. & Order 26 [Doc. 69] (quoting Defs.' Mem. 28 [Doc. No. 53]), even though the record before the court demonstrates that each Planned Parenthood Member is an independent organization that is incorporated and governed separately from other Members, and that each has its own CEO and governance structure. See id. at 8 (citing Custer Decl. ¶ 9 [Doc. No. 5-1]; Lee Decl. ¶ 10 [Doc. No. 5-2]; Ghorbani Decl. ¶¶ 1, 8–9 [Doc. No. 5-3]).

Second, none of the statutes cited by Defendants impact First Amendment protected activity or circumstances in which the affiliation at issue is "part and parcel with . . . associational expression." See Mem. & Order 27 [Doc. No. 69]. Plaintiffs have demonstrated that Planned Parenthood Members' affiliation with each other is expressive. Id. at 26–27. That Congress has used the term "affiliates" in contexts that do not implicate collective advocacy has no bearing on the First Amendment issue here.

2.    Defendants' Renewed Bill of Attainder Arguments

Defendants argue that they are likely to prevail on the merits because Section 71113 is not a bill of attainder. Mem. ISO Mot. to Stay 3 [Doc. No. 85]. First, Defendants argue that Section 71113 does not impose punishment, and instead "advances Congress's 'nonpunitive legislative purpose[]' of ending Medicaid funding for certain abortion providers." Id. (quoting Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 475–76 (1977)). Second, Defendants argue that Section 71113 is not a bill of attainder because it does not single out identifiable individuals. Id. at 6.

The Bill of Attainder Clause prohibits Congress from enacting a law that "legislatively determines guilt and inflicts punishment" on an identifiable party without a judicial trial. Nixon

v. Adm'r of Gen. Servs., 433 U.S. 425, 468 (1977). "The deprivation of any rights, civil or political, previously enjoyed, may be punishment[.]" Cummings v. Missouri, 71 U.S. 277, 320 (1866). The Supreme Court has recognized three necessary inquiries in determining whether a statute imposes punishment: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.'" Selective Serv. Sys., 468 U.S. 841, 852 (1984) (quoting Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 468 (1977)). The determination is ultimately circumstantial, and none of these inquiries are dispositive. See Selective Serv. Sys., 468 U.S. at 852–54.

Defendants contend that "[h]alting the flow of federal Medicaid funds . . . bears no resemblance to the forms of punishment that implicate the Bill of Attainder Clause." Mem. ISO Mot. to Stay 4 [Doc. No. 85]. But in determining that Section 71113 imposes punishment, the court considered not only the deprivation of Medicaid funding, but also the "occupational[] and constitutional harms that the law imposes." Mem. & Order 37 [Doc. No. 69]. The court concluded that "[w]here Section 71113 conditions a specified group's continued participation in Medicaid on Planned Parenthood Members surrendering certain activities" by October 1, 2025, namely ending abortion services and disaffiliating from other Planned Parenthood Members, the law "fits within a historical category of bills of attainder" that required particular parties to "do a given act by a named day" to escape the law's burden. Id. at 38 (collecting sources); see also Gaines v. Buford, 31 Ky. 481, 510 (1833). And because Section 71113 requires Planned Parenthood Members to either stop participating in Medicaid programs or end both legal abortion services and affiliation with other Planned Parenthood Members and Planned

Parenthood Federation, it bars Planned Parenthood Members from participation in Medicaid programs if they continue to affiliate for collective advocacy. See Mem. & Order 38–39 [Doc. No. 69]. It thus bears resemblance to a historical category of bills of attainder that "barr[ed] designated . . . groups from participation in specified employments or vocations." Nixon, 433 U.S. at 474.

Defendants correctly point out that abortion access is no longer constitutionally protected, Mem. ISO Mot. to Stay 7 [Doc. No. 85] (citing Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 232 (2022)), but nothing in the decisions Defendants have appealed turned on an elevated status for abortion rights. That there is no constitutionally protected right to abortion does not leave Planned Parenthood Federation and its Members unprotected by other provisions of the Constitution. Singling out Planned Parenthood Members for exclusion from Medicaid programs so long as they—or any affiliate—continue to provide legal abortion, while allowing other entities that provide legal abortions to receive Medicaid reimbursements for other services, constitutes punishment within the meaning of the Bill of Attainder Clause regardless of whether abortion itself is constitutionally protected.

Defendants next assert that Section 71113 furthers a non-punitive end where "Congress could reasonably conclude that withholding Medicaid funding from entities that perform abortions will discourage at least some . . . abortions." Mem. ISO Mot. to Stay 5–6 [Doc. No. 85]. But Defendants acknowledgement that Section 71113 ends Medicaid funding only "for certain abortion providers," Mem. ISO Mot. to Stay 3 [Doc. No. 85], undercuts their contention that the law is nonpunitive. Indeed, the court determined that "there is a poor fit between Section 71113" and the goal of reducing abortion where the law "excludes few abortion providers from participating in Medicaid programs and bars Planned Parenthood Members that do not provide

abortion from receiving Medicaid funds." Mem. & Order 38–39 [Doc. No. 69]; cf. id. at 47 (explaining "Plaintiffs are likely to show that there is no rational relationship between the class burdened by Section 71113 . . . and the goal of reducing abortion" where "Section 71113 affects only a small number of abortion providers and leaves every other conceivable category unaffected.").

Further, the law's inclusion of only "certain abortion providers" supports the conclusion that Congress acted with an intent to punish. "Courts conduct [the] inquiry" into legislative intent "by reference to legislative history, the context or timing of the legislation, or specific aspects of the text or structure of the disputed legislation." Foretich v. U.S., 351 F.3d 1198, 1225 (D.C. Cir. 2003) (citing Selective Serv. Sys., 468 U.S. at 855 n.15). Here, Section 71113's text and structure, namely the conjunctive criteria that capture "every Planned Parenthood Member and exclude all but two other Medicaid providers[,]" substantiate the conclusion that Congress intended to punish Planned Parenthood Federation and its Members. Mem. & Order 40 [Doc. No. 69].

Additionally, although "statements by individual legislators rank among the least illuminating forms of legislative history" when determining what Congress intended a statute to mean, NLRB v. SW Gen., Inc., 580 U.S. 288, 307 (2017), statements by individual legislators in bill-of-attainder cases are relevant "where the very nature of the constitutional question requires an inquiry into legislative purpose[,]" i.e. whether Congress intended to single out a particular group for punishment. See United States v. O'Brien, 391 U.S. 367, 384 n.30 (1968). And here, where Section 71113's text does, in fact, single out Planned Parenthood Members, the legislative backdrop and statements in the record only corroborate that this was Congress's intent. See Mem. & Order 40–41 [Doc. No. 69].

Relatedly, Section 71113 satisfies the specification prong. A bill of attainder must name the affected parties or apply "to easily ascertainable members of a group[.]" United States v. Lovett, 328 U.S. 303, 315 (1946). A law satisfies the specification prong where it defines the affected class "entirely by irreversible acts committed by them" in the past. See Selective Serv. Sys., 468 U.S. at 848. Courts "have established [four] guideposts to aid in determining whether legislation singles out a person or class within the meaning of the Bill of Attainder Clause." SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 669 (9th Cir. 2002) (citing Selective Serv. Sys., 468 U.S. at 847, United States v. Brown, 381 U.S. 437, 448–49 (1965), and circuit court decisions). Here, the court determined that Plaintiffs were likely to succeed in establishing that Planned Parenthood Federation and its Members were the easily ascertainable target of Section 71113 based on three of these guideposts—whether the identity of the affected class was easily ascertainable when the law was passed, whether the class was defined by "past conduct [that] operates only as a designation of particular persons," and whether "the past conduct defining the affected individual or group consists of 'irrevocable acts committed by them." Mem. & Order 32–36 [Doc. No. 69].

Defendants cite Communist Party of the United States v. Subversive Activities Control Board, 367 U.S. 1 (1961), to argue that "because Section 71113 turns on whether an entity meets various requirements 'as of' [October 1, 2025]" and "plaintiffs 'can escape regulation' by altering their activities," Section 71113 does not define prohibited entities based on "'past conduct,' and instead focuses on future activity." Mem. ISO Mot to Stay 7 [Doc. No. 85]. But Defendants ignore that Section 71113 singles out Planned Parenthood Members by defining the class subject to the regulation based on immutable facts: Only entities that are "essential community provider[s] . . . primarily engaged in family planning services, reproductive health,

18

and related medical care" who, during fiscal year 2023 received more than $800,000 in Medicaid reimbursements or were affiliated with such an entity, are subject to the restriction that the entity not provide abortions as of October 1, 2025. Pub. L. No. 119-21, § 71113(b)(1) 139 Stat. 72 (2025).

For this reason, Section 71113 is distinct from the law at issue in <u>Communist Party</u>. There, any organization could be subject to the law's burden if they engaged in activities triggering the requirement, and each such organization could then shed that burden, if it "should at any time choose to abandon these activities." 367 U.S. at 87. Here, Section 71113 uses retrospective characteristics—including that, in 2023, the entity received at least $800,000 in Medicaid reimbursements or affiliated with an entity that received that amount—to identify the limited set of entities (Planned Parenthood Members and two others) who are burdened with the regulation in the first place. Further, Planned Parenthood Members cannot avoid Section 71113 by abandoning activities at any time; so long as a Member provides elective abortion as of October 1 or affiliates with an entity that does so, it is barred by Section 71113 from receiving Medicaid reimbursements for any services rendered during the entire period that the law is effective. Therefore, the law's burden does not "endure only so long as[] an organization presently conducts operations of a described character." <u>Id.</u>

In any event, Defendants do not dispute that historically, "some [bills of attainder] left the designated parties a way of escaping the penalty." <u>United States v. Brown</u>, 381 U.S. 437, 442 (1965). Consequently, Defendants' reliance on <u>Communist Party</u> is insufficient to make the requisite showing that they are likely to prevail on the merits of Plaintiffs' bill of attainder claim.

B.    *The Remaining Stay Factors*

Defendants have not carried their burden to establish that the remaining factors support staying preliminary relief.

Defendants assert that preliminary injunctive relief threatens significant irreparable harm to the government by interfering with Congress's power over federal spending and the "Executive Branch's authority and ability to enforce the law[.]" Mem. ISO Mot to Stay 15 [Doc. No. 85]. But Defendants do not dispute the court's conclusion that Section 71113 has a negligible impact on the federal budget or on Medicaid spending. See Mem. & Order 53 [Doc. No. 69]. Instead, Defendants point out that "Congress adjusts federal spending for many reasons other than reducing the overall budget deficit[,]" and assert that Congress has determined that "halting funding to certain large abortion providers serves the public interest." Mem. ISO Mot. to Stay 16 [Doc. No. 85].

But "Congress exercises its conferred powers subject to the limitations contained in the Constitution." New York v. United States, 505 U.S. 144, 156 (1992). Therefore, "other constitutional provisions may provide an independent bar" to Congress's exercise of its spending power. South Dakota v. Dole, 483 U.S. 203, 208 (1987). Here, Defendants suffer no irreparable harm where Plaintiffs are substantially likely to succeed in establishing that Section 71113 violates several constitutional provisions. As explained above and in the court's previous orders, it is precisely because Congress targeted only a "certain" group of entities for exclusion from Medicaid programs—all but two of which are Planned Parenthood Federation Members—that Plaintiffs are likely to succeed in establishing that Section 71113 is unconstitutional. See generally Mem. & Order 30–49 [Doc. No. 69]. Although Congress has significant latitude in allocating funds "from a finite pool of resources," Congress cannot pursue fiscal objectives "by

discriminating against individuals or groups." See Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW, 485 U.S. 360, 373 (1988). Where Plaintiffs have shown that Congress has likely exercised its power in violation of Plaintiffs and Planned Parenthood Federation Members' constitutional rights, Defendants do not suffer irreparable harm from preliminary relief pending a final determination of Plaintiffs' claims. Cf. Somerville Pub. Sch. v. McMahon, 139 F.4th 63, 74–75 (1st Cir. 2025) (concluding preliminary injunction "undermining implementation" of federal policy would not cause government irreparable injury where government conceded that policy would be unlawful).

Moreover, Defendants have not established that a stay should issue where Plaintiffs and Planned Parenthood Federation Members face irreparable harm in the absence of preliminary injunctive relief. Although Defendants disagree with the court's conclusions regarding Plaintiffs' constitutional claims, see Mem. ISO Mot for Stay 16 [Doc. No. 85], they do not dispute the principle that constitutional harms, and impingement on First Amendment Freedoms in particular, is an irreparable injury. See Mahmoud v. Taylor, 606 U.S. __, 145 S. Ct. 2332, 2364 (2025). And staying relief that preliminarily enjoins Section 71113's enforcement is counter to the public interest where Plaintiffs are likely to succeed in establishing that Section 71113 is unconstitutional. See Somerville Pub. Sch. v. McMahon, 139 F.4th 63, 76 (1st Cir. 2025); New Hampshire Indonesian Cmty. Support v. Trump, 765 F. Supp. 3d 102, 112 (D.N.H. 2025) (explaining government has "no interest in enforcing an unconstitutional law, [and] the public interest is harmed by the enforcement of laws repugnant to the United States Constitution[]") (citation omitted) (alteration in original); see also Mem. & Order 54 [Doc. No. 69] (citing Roman Cath. Diocese of Brooklyn, 592 U.S. 14, 19–20 (2020)).

Moreover, Plaintiffs have shown via declaration that Planned Parenthood Member clinics will be forced to reduce or eliminate healthcare services and turn away Medicaid patients, that some Member clinics are likely to temporarily or permanently close, and that all Planned Parenthood Member patients are likely to face increased wait times and disrupted or reduced access to care. See Custer Decl. ¶¶ 4, 51, 54–57, 78 [Doc. No. 5-1]; Lee Decl. ¶¶ 40–42 [Doc. No. 5-2]; Ghorbani Decl. ¶¶ 6, 24 [Doc. No. 5-3]; Tosh Decl. ¶¶ 45–48 [Doc. No. 5-4]. In light of this showing, Defendants' unsupported suggestions that Plaintiffs could continue providing the same level of service with other funding sources and that Medicaid patients could obtain the same care from other healthcare providers, see Mem. ISO Mot. to Stay 16 [Doc. No. 85], do not establish that a stay is otherwise in the public interest.

Defendants ultimately contend that because Acts of Congress are presumptively constitutional, they "'should remain in effect pending a final decision on the merits' by the Supreme Court." Mem. ISO Mot. to Stay 2, 15 [Doc. No. 85] (quoting Turner Broadcasting System, Inc. v. FCC, 507 U.S. 1301, 1302 (1993) (Rehnquist, C.J., in chambers)). But here, the court has determined that Plaintiffs have rebutted the presumption of constitutionality that attaches to Acts of Congress for the purpose of seeking preliminary relief. See, e.g., Mem. & Order 54 [Doc. No. 69] (explaining preliminary injunction is in public interest "[w]here Plaintiffs have demonstrated a substantial likelihood of success on constitutional claims premised on impingement of First Amendment associational rights, singling out Planned Parenthood Federation and its Members for legislative punishment, and denial of equal protection").

Courts "may not resolve a conflict between considered review and effective relief" by granting a stay "reflexively." See Nken v. Holder, 556 U.S. 418, 427 (2009). Although the

issuance of a stay is left to the court's discretion, that "does not mean that no legal standard governs that discretion . . . . [A] motion to [a court's] discretion is a motion . . . to its judgment; and its judgment is to be guided by sound legal principles." Id. at 434 (internal citation and quotations omitted). Those legal principles have been distilled into the four stay factors. Id. And for the reasons explained above, Defendants have not established that any of those factors weigh in favor of a stay.

## IV.   Conclusion

For the foregoing reasons, Defendants' Motion to Stay Preliminary Injunctions Pending Appeal [Doc. No. 84] is DENIED.

IT IS SO ORDERED.

August 29, 2025                                                    /s/Indira Talwani
                                                                          United States District Judge